**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **RHEA ANN BROWN** | § | **Case No. 23-70426** |
| | § | **Chapter 13** |
| | § | |
| **Debtor** | § | |
| | § | |
| **RHEA ANN BROWN and GREGORY** | § | |
| **KEVIN MAZE, on behalf of themselves** | § | **ADVERSARY NO. _____** |
| **and all others similarly-situated,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **GOLDMAN SACHS BANK USA,** | § | |
| **d/b/a MARCUS by GOLDMAN** | § | |
| **SACHS,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFFS' ORIGINAL CLASS COMPLAINT
AND APPLICATION FOR INJUNCTIVE RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Plaintiffs Rhea Ann Brown and Gregory Kevin Maze, on behalf of themselves and all others similarly-situated (collectively "Plaintiffs"), file this adversary proceeding against Goldman Sachs Bank USA, d/b/a Marcus by Goldman Sachs ("Goldman Sachs" or "Defendant") seeking relief for themselves and all other consumer bankruptcy debtors who have filed consumer bankruptcy cases in the Western District of Virginia and elsewhere nationwide, who have been subjected to Goldman Sachs's unlawful practice of violating the automatic stay by making repeated and unceasing demand for payment of pre-petition credit card debt.

## I.
## INTRODUCTION

1.      Plaintiffs Brown and Maze file this case on behalf of themselves and all other similarly-situated consumer debtors who have filed for bankruptcy protection under the provisions of Chapter 7 and 13 of Title 11 of the United States Code, commonly known as the United States Bankruptcy Code (11 U.S.C. § 701 *et seq.*) in order to redress and enjoin Goldman Sachs for violations of the automatic stay.

2.      Specifically, Goldman Sachs has repeatedly violated the automatic stay in numerous consumer bankruptcy cases across the country by sending written demands for payment of pre-petition credit card debt, including multiple e-mail communications and/or paper notices to the debtors, as well as collection telephone calls.   Goldman Sachs has failed and refused to cease this practice, despite receiving repeated notice of the bankruptcy cases from the debtor, debtor's counsel, and the Bankruptcy Noticing Center.   As set forth herein, Plaintiffs have been injured by these violations, which are ongoing.

## II.
## JURISDICTION AND VENUE

3.      Jurisdiction of this action arises under 28 U.S.C. § 1334 and §§157(b) and (c). Plaintiffs assert claims against Defendant for violation of the Bankruptcy Code, 11 U.S.C. § 101 *et seq*.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiff Brown's and Plaintiff Maze's claims occurred in this district, Plaintiffs filed for bankruptcy protection in this district, Defendant participated in Plaintiffs' bankruptcy cases in this district, and Defendant transacts business in this district.

5.      This adversary proceeding arises in a case under Title 11 of the United States Code,

**PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT**                                                                2

and it is a core proceeding since it concerns the administration of Plaintiffs' estates and affects the adjustment of the debtor-creditor relationship between the Plaintiffs and the Defendant. Because this is a core proceeding, this court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), and (O) and 28 U.S.C. § 1334(b). Courts in the Fourth Circuit have explained that a proceeding brought under 11. U.S.C. § 362(k)(1) is a core proceeding because it "derive[s] directly from the Bankruptcy Code and can be brought only in the context of a bankruptcy case."[1]

6.      Pursuant to Fed. R. Bankr. P. 7008(a), Plaintiffs consent to the entry of final orders or judgment in this adversary proceeding by the bankruptcy judge. Further, to the extent that any court determines that the Bankruptcy Court does not have authority to enter a final judgment on any cause of action set forth herein, Plaintiffs request that the Bankruptcy Court issue a report and recommendation for entry of a proposed judgment on such cause(s) of action to the United States District Court for the Western District of Virginia.

### III.
### BANKRUPTCY COURT AUTHORITY TO ADJUDICATE THIS MATTER AS A NATIONWIDE CLASS ACTION

7.      28 U.S.C. § 1334(a) confers upon district courts the original and exclusive jurisdiction of all cases under Title 11.

8.      28 U.S.C. § 1334(b) provides that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

9.      28 U.S.C. § 157(a) authorizes district courts to refer cases falling within the ambit

---

[1] *In re Cameron Julius Xavier Banks*, 612 B.R. 167, 169 and n. 1 (Bankr. S.C. 2020) (citing *In re Johnson*, 575 F.3d 1079, 1983 (10h Cir. 2009) (quoting *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 109 (2d Cir. 2006); *See also Davis v. IRS*, 136 F.B. 414, 418 (E.D. Va. 1992).

of § 1334 to bankruptcy judges for that district.

10.    The Order of Reference applicable in the Western District of Virginia provides that "all cases under title 11, U.S.C. and all proceedings arising under title 11, U.S.C. or arising in or related to a case under title 11, U.S.C. pending on this date or filed on or after this date in the Western District of Virginia are referred to the bankruptcy judge for this District…" *Order of Reference, 1984* (W.D. VA Jul. 25, 1984).

11.    This Court has "arising in" jurisdiction in this case because Plaintiffs' claims can only arise in bankruptcy, as they relate to violation of the automatic stay by Defendant in Plaintiff Brown's and Plaintiff Maze's and the other putative class members' consumer bankruptcy cases.

12.    Bankruptcy courts are authorized to handle class actions in adversary proceedings through Fed. R. Bankr. P. 7023, incorporating Fed. R. Civ. P. 23, which provides the authority and procedure through which federal courts certify class actions. *In re Wilborn*, 609 F.3d 748, 754 (5th Cir. 2010); *In re Tate*, 253 B.R. 653, 663 (Bankr. W.D. N.C. 2000); *Harlow v. Wells Fargo & Co. (In re Harlow)*, Adv. No. 20-07028, 2022 Bankr. LEXIS 3512 at *28, n. 11, 2022 WL 17586716 (Bankr. W.D. Va. Dec. 12, 2022).

13.    Because the District Court for the Western District of Virginia has jurisdiction over a nationwide class of debtors, this Court, operating as a unit of the District Court for the Western District of Virginia, has the authority to adjudicate all matters that fall within the District Court's bankruptcy jurisdiction. 28 U.S.C. § 1334. Thus, based on the language set forth in 28 U.S.C. §§ 1334 and 157, and the Western District of Virginia's *Order of Reference, 1984*, this Court may exercise jurisdiction over a nationwide class of debtors, including the class Plaintiffs Brown and Maze seek to represent as set forth in this complaint, provided Plaintiffs and the putative class satisfy all other requirements of Fed. R. Bankr. P. 7023 for certification of a class action.

## IV.
## PARTIES

14.     Plaintiff Rhea Ann Brown is a resident of the Western District of Virginia. Ms. Brown is also the debtor in *In re Rhea Ann Brown*, Chapter 13 Bankruptcy Case No. 23-70426, filed in the United States Bankruptcy Court for the Western District of Virginia, Roanoke Division.

15.     Plaintiff Gregory Kevin Maze is a resident of the Western District of Virginia. Mr. Maze is also the debtor in *In re Gregory Kevin Maze and Patty Lusk Maze*, Chapter 7 Bankruptcy Case No. 23-70735, filed in the United States Bankruptcy Court for the Western District of Virginia, Roanoke Division.

16.     Defendant Goldman Sachs Bank USA ("Goldman Sachs") is a foreign limited liability company.  Goldman Sachs may be served with process through its Chief Executive Officer as it is a FDIC insured banking institution.

## V.
## FACTUAL ALLEGATIONS SPECIFIC TO THE NAMED PLAINTIFFS

a.   Rhea Ann Brown.

17.     On June 14, 2023, Rhea Ann Brown filed a voluntary for bankruptcy relief under Chapter 13 of the United States Bankruptcy Code under Case No. 23-70426 (the "Brown Bankruptcy").[2]

18.     Ms. Brown listed Goldman Sachs Bank USA as a creditor on her Schedule F filed in the Brown Chapter 7.  Brown BK Docket No. 1.  Ms. Brown also included Goldman Sachs Bank USA on the mailing matrix in the case.  *Id*.

19.     Ms. Brown listed the address of Goldman Sachs Bank USA at the Bankruptcy

---

[2] References to docket entries in the Brown Bankruptcy are hereinafter sometimes referred to "Brown BK Docket No. [x]."

Specific Address reported to the national credit reporting bureaus.

20.     On or about June 16, 2023, the Bankruptcy Noticing Center electronically transmitted notice of the Brown Bankruptcy to Goldman Sachs Bank USA at the electronic address it had designated with the federal Bankruptcy Noticing Center. Brown BK Docket No. 8.

21.     The § 341 creditors' meeting notice sent by the Bankruptcy Noticing Center on June 14, 2023, included the following language:

> The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtors or the debtor's property. For example, while the stay is in effect, creditors cannot sue, garnish wages, assert a deficiency, repossess property, or otherwise try to collect from the debtors. Creditors cannot demand repayment from the debtors by mail, phone, or otherwise. (Emphasis added.)

22.     Despite the Defendant having been properly noticed of Ms. Brown's bankruptcy case, Defendant emailed Ms. Brown in an attempt to collect pre-petition debt on the following dates, among others:

a.     June 16, 2023. *See* Exhibit A.

b.     June 29, 2023. See Exhibit B.

c.     July 17, 2023. See Exhibit C.

23.     On July 21, 2023, counsel for Ms. Brown mailed the Defendant a letter demanding that Defendant cease all collection efforts.  *See* Exhibit D.

24.     The Defendant nevertheless continued collection attempts via email communications to Ms. Brown by sending an additional email on August 25, 2023. *See* Exhibit E.

25.     On October 3, 2023, Defendant sent yet another collection email to Ms. Brown. *See* Exhibit F.   Ms. Brown responded to Defendant's October 3, 2023, collection email by email dated October 11, 2023, in which Ms. Brown stated that the Goldman Sachs account was included in her bankruptcy case and that she should not be receiving collection emails.  *Id*.

**PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT**                                        6

26.     On December 20, 2023, Defendant sent Ms. Brown an additional collection email. *See* Exhibit G.

27.     On December 27, 2023, Ms. Brown talked with a representative of Defendant via telephone, during which she told the representative that her account was included in her bankruptcy case.  During this call, Defendant transferred Ms. Brown to several different representatives, but none of the representatives were able to assist Ms. Brown or otherwise prevent Defendant's continued efforts to collect pre-petition amounts during her Chapter 13 case in violation of the stay.

28.     Defendant also made a collection call to Ms. Brown on January 12, 2024. Defendant left a voicemail for Ms. Brown asking her to return Defendant's call.[3]  *See* Exhibit H.

29.     On January 16, 2024, counsel for Ms. Brown mailed the Defendant yet another letter demanding that Defendant cease all collection efforts.  *See* Exhibit I.

30.     Despite receiving multiple notices of the bankruptcy case and multiple demands to cease all collection efforts, Defendant sent Ms. Brown another collection email on January 23, 2023.  *See* Exhibit J.

31.     Defendant sent an email to Ms. Brown dated February 13, 2024, entitled "Change in Terms Notice," in which Defendant advised Ms. Brown of certain changes in the terms of her Apple Card Customer Agreement.  *See* Exhibit K.

32.     The Defendant has threatened to report Ms. Brown's account(s) as a charge off, thereby threatening and undermining Ms. Brown's effort to rebuild her credit once she completes her Chapter 13 plan. *See* Exhibits A, B, C, E, F, G and J.

33.     Defendant repeatedly violated 11 U.S.C. § 362(3) and (6) by attempting to collect

---

[3] Ms. Brown believes that Defendant made additional collections calls and sent additional emails than the communications listed here and believes that her cell phone carrier will have records of these communications.

**PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT**                                    7

pre-petition debts after the petition date.

34.     Defendant's actions constitute willful and intentional violations of the automatic stay by attempting to pressure and harass Ms. Brown into paying pre-petition debts.

35.     Defendant's actions have cause Ms. Brown injury.

36.     Defendant's actions have caused Ms. Brown distress, stress, and anxiety, as Ms. Brown has continued to be concerned about the potential for ongoing and escalated continued collection activity despite the fact she filed bankruptcy with the goal of avoiding such collection efforts. As a result of the Defendant's illegal actions, Ms. Brown has further suffered the loss of time in communicating with Counsel as well as time communicating with the Defendant in an effort to stop the post-petition collection activity.

37.     Ms. Brown has been forced to request her counsel take legal action to protect her interests against a creditor that has ignored and continued to ignore the automatic stay by continued collection efforts and harassment.

b.     Gregory Kevin Maze.

38.     On November 9, 2023, Gregory Kevin Maze and his wife Patty Lusk Maze filed their voluntary petition for bankruptcy relief under Chapter 7 of the United States Bankruptcy Code under Case No. 23-70652 (the "Maze Bankruptcy").[4]

39.     Mr. Maze listed Goldman Sachs Bank USA as a creditor on his Schedule F filed in the Maze Chapter 7.  Maze BK Docket No. 1.  Mr. Maze also included Goldman Sachs Bank USA on the mailing matrix in the case.  *Id*. On or about November 14, 2023, the Bankruptcy Noticing Center electronically transmitted notice of the Maze Bankruptcy to Goldman Sachs Bank USA.

---

[4] References to docket entries in the Maze Bankruptcy are hereinafter sometimes referred to "Maze BK Docket No. [x]."

**PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT**                                        8

Maze BK Docket No. 8.

40.     The § 341 creditors' meeting notice sent by the Bankruptcy Noticing Center on November 9, 2023, included the following language:

> The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtors or the debtor's property. For example, while the stay is in effect, creditors cannot sue, garnish wages, assert a deficiency, repossess property, or otherwise try to collect from the debtors. Creditors cannot demand repayment from the debtors by mail, phone, or otherwise. (Emphasis added.)

41.     Despite the Defendant having been properly noticed of Mr. Maze's bankruptcy case, the Defendant continued to email and telephone Mr. Maze regularly about his account, trying to collect.

42.     Defendant made a telephone call to Mr. Maze on January 12, 2024, in an attempt to collect pre-petition debt.  *See* Exhibit L.  In addition, Defendant emailed Mr. Maze in an attempt to collect on the following dates among others:[5]

    a.   February 7, 2024. *See* Exhibit M.

    b.  February 15, 2024. *See* Exhibit N.

43.     Defendant made an additional collection call to Mr. Maze on February 15, 2024. *See* Exhibit O. During the February 15, 2024, phone call, Defendant's representative sought payment from Mr. Maze on the credit card account. Mr. Maze informed Defendant's representative that he had filed bankruptcy on November 9, 2023. Mr. Maze also provided his bankruptcy counsel's contact information. In response, the Defendant's representative stated that it was not her job to call Mr. Maze's bankruptcy counsel, but it was Mr. Maze's job to pay his bills.

44.     Despite the February 15, 2024, phone call during which Mr. Maze informed the

---

[5] Goldman Sachs sent Mr. Maze collection emails in addition to the emails listed here, but Mr. Maze deleted those emails in frustration with Defendant's illegal collection efforts.

**PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT**                                        9

Defendant's representative that he had filed bankruptcy, and despite having received notice of the bankruptcy case from the debtor and the Bankruptcy Noticing Center, Goldman Sachs nevertheless continued collection attempts via an email communication to Mr. Maze on February 20, 2024. *See* Exhibit P.

45. The Defendant has threatened to report Mr. Maze's account(s) as a charge off, thereby threatening and undermining Mr. Maze's effort to rebuild his credit. *See* Exhibits M, N and P.

46. Defendant repeatedly violated 11 U.S.C. § 362(3) and (6) by attempting to collect pre-petition debts after the petition date.

47. Defendant's actions constitute willful and intentional violations of the automatic stay by attempting to pressure and harass Mr. Maze into paying pre-petition debts.

48. Defendant's actions have caused Mr. Maze injury.

49. Defendant's actions have caused Mr. Maze distress, stress, and anxiety, as Mr. Maze has continued to be concerned about the potential for ongoing and escalated continued collection activity despite the fact he filed bankruptcy with the goal of avoiding such collection efforts. As a result of the Defendant's illegal actions, Mr. Maze has further suffered the loss of time in communicating with counsel as well as time communicating with the Defendant in an effort to stop the post-petition collection activity.

50. Mr. Maze has been forced to request his counsel take legal action to protect his interests against a creditor that ignored the automatic stay by continued collection efforts and harassment.

c.   Other debtors with similar complaints:

51. Defendant has violated the automatic stay in at least two other consumer Chapter 7

bankruptcy cases pending in the Western District of Virginia.

52.     After filing her Chapter 7 bankruptcy case under Case No. 23-70652, debtor Jennifer Suzanne Garrett received numerous email communications from Goldman Sachs demanding payment of pre-petition credit card debt,[6] despite the fact that (a) Ms. Garrett had listed Goldman Sachs Bank USA and Marcus by Goldman Sachs as creditors on her Schedule F,[7] (b) Ms. Garrett had included both creditor entities on the mailing matrix in her case,[8] (c) Goldman Sachs received notice of Ms. Garrett's Chapter 7 bankruptcy case from the Bankruptcy Noticing Center,[9] and (d) Ms. Garrett's bankruptcy counsel sent a certified letter to Goldman Sachs demanding that it cease collection efforts.[10]  As in the instant case, Defendant's emails threatened to report Ms. Garrett's account(s) as a charge off, thereby threatening and undermining the Ms. Garrett's effort to rebuild her credit.   Goldman Sachs' violation of the stay in Ms. Garrett's Chapter 7 bankruptcy case is the subject of Adversary No. 24-07003, pending in the United States Bankruptcy Court for the Western District of Virginia.

53.     Defendant also violated the stay repeatedly in the Chapter 7 bankruptcy case of William Todd Buzuma and Rita Marie Buzuma, under Case No. 22-60367 in the Bankruptcy Court for the Western District of Virginia.[11]  Despite receiving notice of the Buzumas' chapter 7 case,

---

[6] References to docket entries in the Garrett Bankruptcy are hereinafter sometimes referred to "Garrett BK Docket No. [x]."

[7] Garrett BK Docket No. 1.

[8] *Id*.

[9]  Garrett BK Docket No. 6.

[10] Ms. Garretts' bankruptcy counsel is Giles & Lambert, P.C., counsel for Plaintiffs in this case.  *See* Complaint at Docket No. 1 in Adv. No. 24-07003 for complete recitation of the facts and copies of communications.

[11] References to docket entries in the Buzuma Bankruptcy are hereinafter sometimes referred to "Buzuma BK Docket No. [x]." The Buzumas' bankruptcy counsel is Giles & Lambert, P.C., counsel for Plaintiffs in this case.

PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT                                                    11

both from the Bankruptcy Noticing Center and from the Buzumas' bankruptcy counsel,[12] Goldman

Sachs repeatedly sent written demand to the Buzumas demanding payment of pre-petition credit

card debt.[13] Goldman Sachs also made demand for payment directly to Ms. Buzuma in a telephone

call after the petition date.

54.    Goldman Sach's violation of the stay in the Buzumas' Chapter 7 bankruptcy case

was the subject of Adversary No. 22-06014 (the "Buzuma Adversary"), in the United States

Bankruptcy Court for the Western District of Virginia, Roanoke Division. In the Buzuma

Adversary, Goldman Sachs failed to answer or otherwise employ counsel,[14] and the Buzumas

obtained an order on their Motion for Default Judgment, following testimony presented in open

court, after which the Court held that Goldman Sachs willfully violated the stay and awarded the

Buzumas $750.00 in damages each, together with $2,070 in attorneys' fees.  *See* **Exhibit Q**.

**VI.**
**CLASS ALLEGATIONS**

55.    On information and belief, Goldman Sachs made demand and/or attempted to

collect pre-petition debts from consumer debtors post-petition through repeated phone calls,

emails, written statements, and other communications.

---

[12] See Buzuma BK Docket No. 1 (Mailing Matrix) and Docket No. 7, Bankruptcy Noticing Center certificate of
service.

[13] Goldman Sachs had acquired at least two credit card accounts from Capital One which were listed on the Buzumas'
schedules. *See* Complaint at Docket No. 1 in Adv. No. 22-06014 for complete recitation of the facts and copies of
communications.

[14] Goldman failed to obtain counsel despite the fact that the Buzumas' counsel served Goldman's Chief Executive
Officer David Solomon with the Summons issued in the Buzuma Adversary.  *See* Docket No. 3 in the Buzuma
Adversary.  Despite this direct service, Goldman failed to defend this suit, presumably preferring to let a default
judgment be entered for clear and repeated stay violations.

56. Because Defendant's wrongful conduct is widespread and uniform, this case should be certified for class action treatment pursuant to Fed. R. Bankr. P. 7023(a) and 7023(b)(2) and (3).

57. The class Plaintiffs seek to represent consists of all individuals in the United States:

- who currently are in a consumer bankruptcy case or were formerly in a consumer bankruptcy case (either Chapter 7, Chapter 11 or Chapter 13), and

- from whom Defendant made a post-petition demand for pre-petition debt.

- The class does not include the Judges of this Court, the Judges of the United States Courts of Appeals, or the Justices of the United States Supreme Court.

58. <u>Numerosity</u> – The class is so numerous, with class members throughout the country, that joinder of all class members is impracticable. Upon information and belief, this is a uniform and systemic practice by Goldman Sachs and the number of nationwide impacted consumer debtors number in the hundreds at a minimum. A class action is the only feasible method of adjudicating the rights of the affected borrowers, and, absent allowance of a certification of a class action, a failure of justice will result. Investigation of Defendant's stay violations in jurisdictions across the United States indicates that Defendants are violating the stay as to debtors in many more states. The number of putative class members that have already been identified is sufficient to justify further discovery to establish the numerosity element of Rule 7023, as there are likely many more unidentified putative class members throughout the country.

59. <u>Commonality</u> – The questions of law and fact common to all class members that predominate over those pertaining to individual class members include, but are not limited to, whether Defendant engaged and engages in the practices complained of and whether such actions violate the Bankruptcy Code and Rules, and other federal law as alleged. Specifically, the common

question of law is whether Defendant's practice of making post-petition demand for payment of pre-petition debt constitutes a violation of the automatic stay.  A common question of fact is whether Defendant has violated the stay in consumer debtors' cases around the country.

60.    <u>Typicality</u> - Plaintiff's claims are typical of the claims of the class members.  All are based on the same factual and legal theories.  The Plaintiffs have been subjected to the same misconduct as the members of the proposed class.

61.    <u>Adequacy of representation</u> – Plaintiffs will fairly and adequately protect the interests of all class members.  Plaintiffs understand their responsibilities to the class as a whole, and they understand that Defendant's violations of the automatic stay threaten to undermine the bankruptcy process and the debtors' opportunity for a fresh start in other class members' consumer bankruptcy cases nationwide. Plaintiffs have retained capable counsel experienced in state and federal consumer law and consumer class-action litigation, and consumer bankruptcy law class-action litigation.  Neither Plaintiffs nor their counsel have any conflicts that would interfere with the vigorous prosecution of this action.

62.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy in that:

(a) the class necessarily consists of persons (consumer debtors) in unfavorable economic circumstances who are not able to pay to maintain individual actions against Defendant,

(b) many class members lack the sophistication to recognize that Defendant's actions are unlawful and to retain litigation counsel,

(c) many class members have acceded or will accede to Defendant's unlawful conduct, and

(d) there is no reason that the courts should be burdened with multiple lawsuits challenging Defendant's facially improper practice of violating the automatic stay in borrowers'

consumer bankruptcy cases.

63.     Finally, Plaintiffs would show the Court that Defendant, in violating the stay in the manner alleged herein, has acted and refused to act on grounds generally applicable to the class as a whole.

## VII.
## CAUSE OF ACTION

### (VIOLATION OF THE AUTOMATIC STAY)

64.     Plaintiffs repeat and reallege the allegations in this complaint.

65.     Goldman Sachs' actions in this case constitute willful violations of the automatic stay as set forth in 11 U.S.C. § 362(a)(3) and (6).

66.     Goldman Sachs had actual knowledge that Plaintiffs were debtors in pending consumer cases and that the automatic stay was in effect at the time it took the actions described herein.

67.     Goldman Sachs violated the automatic stay by communicating with, or attempting to communicate with, Plaintiffs directly regarding the collection of pre-petition debts.

68.     Goldman Sachs' conduct as described herein is part of a general pattern and practice of conduct by Goldman Sachs, which is either expressly authorized by, or not specifically prohibited by, their policies and procedures.

69.     Plaintiffs and the members of the class were injured by Goldman Sachs' violation of the automatic stay as set forth in this complaint.

70.     Goldman Sachs' acts constitute willful violations of the automatic stay.  Goldman Sachs knew the automatic stay was applicable to Plaintiffs and the members of the class, its actions were intentional, and the acts alleged herein violated the provisions and purposes of the Bankruptcy Code.

71.    As a result of the above violations of 11 U.S.C. § 362, and pursuant to 11 USC § 362(k), the Bankruptcy Code, the Court's inherent powers, and its authority to enforce provisions of the Bankruptcy Code pursuant to 11 U.S.C. § 105, Goldman Sachs is liable to Plaintiffs and the class for their actual damages, punitive damages, and reasonable attorneys' fees and costs resulting from Defendant's willful stay violations.

### VIII.
### REQUEST FOR DECLARATORY RELIEF

72.    Plaintiffs repeat and reallege the allegations in this complaint.

73.    As outlined in the preceding counts and the preceding factual allegations, Goldman Sachs has violated 11 U.S.C. § 362.  Plaintiffs seek a declaration that Goldman Sachs' conduct as described herein violates 11 U.S.C. § 362.

### IX.
### REQUEST FOR PRELIMINARY INJUNCTION

74.    Plaintiffs repeat and reallege the allegations in this complaint.

75.    Plaintiffs and the class are entitled to a preliminary injunction, pursuant to Fed. R. Civ. P. 65 and 11 U.S.C. § 105(a), enjoining Goldman Sachs from engaging in the acts and practices described herein, enjoining Defendant from making any effort to collect on any accounts subject to the automatic stay.

76.    Plaintiffs assert that Goldman Sachs will continue to wrongfully attempt to collect pre-petition debts in violation of the automatic stay.

77.    There is a substantial likelihood that Plaintiffs will prevail on the merits, as the Court has already sanctioned Goldman Sachs for identical conduct. *See Buzuma v. Goldman Sachs Bank USA, d/b/a Marcus by Goldman Sachs*, Adv. No. 22-06014, in the United States Bankruptcy

**PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT**                                          16

Court for the Western District of Virginia, Roanoke Division, at ECF 16. This Court has already disapproved of Goldman Sachs' violation of the automatic stay in consumer bankruptcy cases.

78. The harm faced by the Plaintiffs and the class outweighs any "harm" that will be sustained by Goldman Sachs if the preliminary injunction were granted.

79. Issuing a preliminary injunction will not adversely affect the public interest but rather will enhance it. Goldman Sachs's actions eviscerate the purposes of the Bankruptcy Code and the administration of consumer bankruptcy proceedings, which are intended to provide the debtors the ability to cure their arrearages and/or receive a "fresh start" upon discharge. Goldman Sachs' actions broadcast (again) its perception that it has impunity for conduct that overtly disobeys the provisions of the United States Bankruptcy Code and court orders. Goldman Sachs' actions erode public confidence in the bankruptcy courts' ability to ensure that debtors receive the "fresh start" following their discharge.

80. The public has the right to expect that the courts will enforce the provisions of the Bankruptcy Code and will not allow lenders to illegally undermine and even destroy debtors' right to be protected by the automatic stay. Even though the Court should balance the threatened injury to Plaintiffs against any harm to the defendant, when balancing the hardships of the public interest against a private interest, the public interest should receive greater weight. *See FTC v. World Wide Factors*, 882 F.2d 344, 346-47 (9th Cir. 1989). The substantial adverse effects of Goldman Sachs' violations of the automatic stay militate strongly in favor of this Court issuing a preliminary injunction.

81. The posting of a bond is not a prerequisite to the issuance of a preliminary injunction in this case because Goldman Sachs cannot demonstrate that preserving the *status quo* will cause it cognizable economic harm. *See FTC v. Southwest Sunsites, Inc.*, 665 F. 2d 711, 714

**PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT** 17

n.1 (5th Cir. 1982) (ruling that a temporary restraining order or preliminary injunction may be granted without bond). Goldman Sachs' violation of the automatic stay alters the *status quo* in consumer bankruptcy cases. The Plaintiffs' and class members' consumer bankruptcy petitions created a *status quo* whereby the Plaintiffs and the class members were protected from collection during the pendency of their case. The *status quo* is the Bankruptcy Code and Rules, and the process by which debtors obtain a discharge. Since the Plaintiffs and class members have limited means to pay for a bond, the posting of security is unnecessary.

82. In addition, or alternatively, the Court can issue a preliminary injunction to prevent Goldman Sachs from taking the actions Plaintiffs and the class seek to enjoin based on its 11 U.S.C. § 105(a) authority. Plaintiffs and class members therefore request that the Court use its 11 U.S.C. § 105(a) authority to issue a preliminary injunction enjoining Goldman Sachs from engaging in the acts set forth above during the pendency of this case.

83. Plaintiffs ask the Court to set this application for preliminary injunction for hearing if the parties are unable to agree to a preliminary injunction and, after hearing the request, issue a preliminary injunction against Goldman Sachs enjoining it from the actions set out above.

### XI.
### REQUEST FOR PERMANENT INJUNCTION

84. Plaintiffs reallege and incorporate by reference the above-numbered paragraphs.

85. Plaintiffs and the class are entitled to an injunction permanently enjoining Goldman Sachs from engaging in the acts and practices above as to any person who is a member, or could become a member, of the class of persons described in this suit.

### XII.
### PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs respectfully pray that

**PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT** 18

Defendant be cited to appear and answer these allegations and that, upon final trial of this cause,

they be granted all relief to which they are justly entitled, including:

a. Certification of the class of consumer debtors who have been subjected to Defendant's illegal attempt to collect pre-petition debt in violation of the automatic stay;

b. All actual damages, including attorneys' fees and costs (at trial and on appeal) to which Plaintiffs and the class are entitled;

c. All compensatory damages to which Plaintiffs and the class are entitled, including attorneys' fees and costs, exemplary damages, and/or punitive damages and sanctions for Defendant's actions as described herein, and a finding of contempt;

d. A declaration that Defendant's actions violate 11 U.S.C. § 362;

e. An injunction preventing Defendant from engaging in the conduct described herein and requiring Defendant to restore the Plaintiffs' and class members accounts to *status quo ante*; and

f. All such other and further relief as this Court may deem just and proper.

Respectfully submitted,

*/s/ Malissa L. Giles*
Malissa L. Giles, VSB #33955
Tracy A. Giles, VSB # 34594
Giles & Lambert, PC
PO Box 2780
Roanoke, VA 24001
Tel: (540) 981-9000
mgiles@gileslambert.com

Theodore O. Bartholow III ("Thad")*
Texas State Bar No. 24062602
Karen L. Kellett*
Texas State Bar No. 11199520
KELLETT & BARTHOLOW PLLC
11300 N. Central Expressway, Suite 301
Dallas, TX 75243
Tel.: (214) 696-9000
Fax: (214) 696-9001
thad@kblawtx.com
kkellett@kblawtx.com
*Pro Hac Vice* to be filed.

ATTORNEYS FOR THE PLAINTIFFS

**PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT**                                        19