## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **RHEA ANN BROWN** | § | **Case No. 23-70426** |
| | § | **Chapter 13** |
| | § | |
| Debtor | § | |
| | § | |
| **RHEA ANN BROWN and GREGORY** | § | |
| **KEVIN MAZE, on behalf of themselves** | § | **ADVERSARY NO. 24-07009** |
| **and all others similarly situated,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| **GOLDMAN SACHS BANK USA,** | § | |
| **d/b/a MARCUS by GOLDMAN** | § | |
| **SACHS,** | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S
## MOTION TO COMPEL ARBITRATION

## Table of Contents

Page(s)

I.    **Introduction**........................................................................................................**5**

II.   **Relevant Facts** ....................................................................................................**7**

III.  **Arguments & Authorities**.................................................................................**8**

    *a.*  Because Plaintiffs' stay violation claims are constitutionally core, the Court has discretion and authority to deny Defendant's motion to compel arbitration .................9

    *b.*  The Court should exercise its discretion—especially in this class case—to deny Defendant's motion to compel arbitration of Plaintiffs' constitutionally core claim because doing so best serves the interests of the Bankruptcy Code ...........................12

        1.  Denial of Defendant's motion to compel arbitration is consistent with uniform nationwide enforcement of the Bankruptcy Code, as contemplated by the Constituion's Bankruptcy Clause .........................................................................13

        2.  The automatic stay is the key mechanism in the Bankruptcy Code that allows the bankruptcy process to function as Congress intended, and outsourcing its enforcement to private arbitration would undermine its efficiency and pose an inherent conflict with the Bankruptcy Code's underlying purpose ......................14

    *c.*  Individual creditors' contractual rights, including arbitration clauses, must give way to allow the bankruptcy process to function properly.................................................15

    *d.*  Regardless of the status of Plaintiffs' bankruptcy cases at the time this lawsuit was filed, denial of the motion to compel arbitration in the context of this class action seeking redress for Defendant's widespread pattern of willful stay violations best serves the interests of the bankruptcy process ............................................................16

    *e.*  The Bankruptcy Code cannot be reconciled with the FAA in the context of enforcement of the automatic stay ...................................................................................18

    *f.*  Bankruptcy courts are specifically equipped to address stay violations, but arbitrators are not.................................................................................................................................18

IV.   **Conclusion** .......................................................................................................**20**

# Table of Authorities

Page(s)

Cases

*Allard v. Benjamin (In re DeLorean Motor Co.),*
   49 B.R. 900 (Bankr. E.D. Mich. 1985) ..................................................................... 18
*Allied Title Lending, LLC v. Taylor,*
   420 F. Supp. 3d 436 (E.D. Va. 2019) ................................................................... 8, 9
*Ames Dep't Stores, Inc. v. Lumbermens Mut. Cas. Co. (In re Ames Dep't Stores, Inc.),*
   542 B.R. 121 (Bankr. S.D.N.Y. 2015) .................................................................... 18
*AT&T Mobility,*
   563 U.S. 339 (2011) ................................................................................................. 15
*Banque Francaise du Commerce Exterieur v. Rio Grande Trading, Inc.,*
   17 B.R. 134 (Bankr. S.D. Tex. 1981) ..................................................................... 15
*Carmac Fund L.P. v. McPherson (In re McPherson),*
   630 B.R. 160 (Bankr. M.D. June 1, 2021) .............................................................. 10
*Celotex Corp. v. Edwards,*
   514 U.S. 300, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995) ...................................... 10
*Central Virginia Community College v. Katz,*
   546 U.S. 356 (2006) ................................................................................................. 13
*Chicora Life Ctr., LC v. UCF 1 Trust 1 (In re Chicora Life Ctr., LC),*
   553 B.R. 61 (Bankr. D. S.C. 2016) ......................................................................... 10
*Elder-Beerman Stores Corp. v. Thomasville Furniture Indus. (In re Elder-Beerman Stores Corp.),*
   195 B.R. 1019 (Bankr. S.D. Ohio 1996) ................................................................. 12
*Ellwood City Iron & Wire Co. v. Flakt, Inc. (In re Ellwood City Iron & Wire Co.),*
   59 B.R. 53 (Bankr. W.D. Pa. 1986) ........................................................................ 15
*Fisher v. Apostolou,*
   155 F.3d 876 (7th Cir. 1998) ................................................................................... 10
*Grady v. A.H. Robins Co.,*
   839 F.2d 198 (4th Cir. 1988) ................................................................................... 13
*Harlow v. Wells Fargo & Co. (In re Harlow),*
   No. 17-71487, 2022 WL 17586716 (Bankr. W.D. Va. Dec. 12, 2022) ............... 10, 11
*In re Banner,*
   2016 WL 3251886 (Bankr. W.D. N.C. June 2, 2016) ............................................. 10
*In re Camberon Julius Xavier Banks,*
   612 B.R. 167 (Bankr. S.C. 2020) .............................................................................. 9
*In re Garner,*
   2010 WL 890406 (Bankr. M.D.N.C. Mar. 9, 2010) ................................................ 14
*In re Kestell,*
   99 F.3d 146 (4th Cir. 1996) ..................................................................................... 10
*In re Miszko,*
   627 B.R. 809 (Bankr. S.D.N.Y. 2021) ..................................................................... 12
*In re Perry,*
   2004 WL 3510115 (Bankr. M.D.N.C. June 3, 2004) ................................................ 6
*In re Riddick,*

231 B.R. 265 (Bankr. N.D. Ohio 1999) .......................................................................... 6

*In re Seaton*,
462 B.R. 582 (Bankr. E.D. Va. 2011) ................................................................... 13, 14

*In re Shade*,
261 B.R. 213 (Bankr. C.D. Ill. 2001) ........................................................................ 6

*In re Walters*,
868 F.2d 665 (4th Cir. 1989) ................................................................................ 10

*In re White Mountain Mining Co.*,
403 F.3d 164 (4th Cir. 2005) ............................................................................... 18

*Jones v. Tri-City Auto Sales (In re Jones)*,
2012 WL 5993760 (Bankr. E.D. Va. 2012) ........................................................... 14

*Liberty Assoc. v. Prescott Forbes Real Estate Corp. (In re 222 Liberty Assoc.)*,
110 B.R. 196 (Bankr. E.D. Pa. 1990) .................................................................... 12

*Matter of Pease*,
195 B.R. 431 (Bankr. D. Neb. 1996) ..................................................................... 15

*MBNA America Bank, N.A. v. Hill*,
436 F.3d 104 (2d Cir. 2006) ................................................................................. 15

*Mercury Masonry Corp. v. Terminal Constr. Corp. (In re Mercury Masonry Corp.)*,
114 B.R. 35 (Bankr. S.D.N.Y. 1990) .................................................................... 15

*Midatlantic Nat'l Bank v N.J. Dep't of Envtl. Prot.*,
474 U.S. 494 (1986) .............................................................................................. 9

*Moses v. CashCall, Inc.*,
781 F.3d 63 (4th Cir. 2015) ............................................................................. 9, 10

*Rodriguez v. Countrywide (In re Rodriguez)*,
396 B.R. 458 (Bankr. S.D. Tex. 2008) .................................................................. 11

*Rushing v. Green Tree Servicing, LLC (In re Rushing)*,
443 B.R. 85 (Bankr. E.D. Tex. 2010) .............................................................. 14, 19

*Shearson/Am. Express, Inc. v. McMahon*,
482 U.S. 220 (1987) ......................................................................................... 9, 10

*Stern v. Marshall*,
564 U.S. 462 (2011) .............................................................................................. 8

*Taylor v. Allied Title Lending, LLC*,
594 B.R. 643 (Bankr. E.D. Va. 2018) ................................................................... 15

*United States v. Gold (In re Avis)*,
178 F.3d 718 (4th Cir. 1999) ................................................................................. 9

*Walker v. Gotcha Towing & Recovery, LLC (In re Walker)*,
551 B.R. 679 (Bankr. M.D. Ga. 2016) ............................................................Passim

*Walker v. UpRight Law (In re Walker)*,
615 B.R. 770 (Bankr. D. S.C. 2020) ...................................................................... 10

*Wheeling-Pittsburgh Steel Corp. v. Blue Cross & Blue Shield of W. Va., Inc. (In re Wheeling-Pittsburgh Steel Corp.)*,
108 B.R. 82 (Bankr. W.D. Pa. 1989) ..................................................................... 15

*Winters By and Through McMahon v. George Mason Bank*,
94 F.3d 130 (4th Cir.1996) ................................................................................... 13

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Plaintiffs Rhea Ann Brown and Gregory Kevin Maze, on behalf of themselves and all others similarly-situated (collectively "Plaintiffs"), file this response to Defendant Goldman Sachs Bank USA, d/b/a Marcus by Goldman Sachs's ("Goldman Sachs" or "Defendant") motion to compel arbitration of the automatic stay violations asserted by Plaintiffs in this adversary proceeding.

## I.      INTRODUCTION

Plaintiffs Brown and Maze filed this case on behalf of themselves and all other similarly-situated consumer debtors who have filed for bankruptcy protection under the provisions of Chapter 7, 11, and 13 of the Bankruptcy Code (11 U.S.C. § 701 *et seq.*) in order to redress and enjoin Goldman Sachs's violations of the automatic stay. Plaintiffs allege Goldman Sachs has repeatedly violated the automatic stay in Plaintiffs' cases and in numerous other consumer bankruptcy cases across the country by sending post-petition written demands for payment of pre-petition credit card debt, including multiple e-mail communications and/or paper notices and demands to the debtors, as well as by making post-petition collection telephone calls. Goldman Sachs failed and refused to cease this practice, despite receiving repeated notices of the bankruptcy cases from the debtors, debtors' counsel, and the U.S. Courts' Bankruptcy Noticing Center. As set forth herein, Plaintiffs have been injured by these violations, which are ongoing.[1]

The true purpose of Goldman Sachs's motion to compel arbitration is to preemptively defeat class certification and gut the bankruptcy court's ability to effectively police Goldman Sachs's systematic violations of the Bankruptcy Code and Rules—contrary to the very design and

---

[1] Notably, in November of 2022, this Court entered judgment against Goldman Sachs in a previous case, *Buzuma v. Goldman Sachs (In re Buzuma)*, Adversary No. 7:22-ap-6014 (Bankr. W.D. Va. Nov. 28, 2022), attached as Exhibit Q to Plaintiffs' Complaint at ECF 1-17, yet Goldman Sachs's practices continued unabated. Moreover, as of the filing of this brief, Goldman Sachs still has not satisfied the Court's judgment in *Buzuma*.

**RESPONSE TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**                    **Page 5**

purpose of the Code and Rules as drafted by Congress—and to limit Plaintiffs' remedies in this matter. If Goldman Sachs's strategy is successful, one of the most fundamental protections of the Bankruptcy Code—the automatic stay—will be irretrievably eroded, not just in this case, but in the cases of virtually all debtors in all chapters of bankruptcy in the country. This is not what Congress contemplated when it passed the Federal Arbitration Act (FAA), nor has Congress envisioned a Bankruptcy Code that would, as a practical matter, be uniformly applicable only to those creditors who fail to include mandatory arbitration in their contracts.

Goldman Sachs minimizes the facts that an action to enforce a violation of the automatic stay is a constitutionally core issue and that its arguments are incompatible with the law in the Fourth Circuit. There are no secondary issues of state law or non-bankruptcy related claims in this case. The automatic stay is a fundamental pillar of the bankruptcy process, but Goldman seeks to relegate it to an afterthought.

Consequences for creditors who commit stay violations, in the form of punitive damages and sanctions, are especially crucial to the proper functioning of the bankruptcy process. Notably, Goldman Sachs's motion claims that Plaintiffs are "only" seeking monetary damages. ECF 15 at ¶¶ 12, 13. However, Plaintiffs also seek injunctive relief for the class, and the monetary damages Plaintiffs seek include punitive damages, the purpose of which is "to cause a change in the creditor's behavior; the prospect of such change is relevant to the amount of punitive damages to be awarded." *In re Shade,* 261 B.R. 213, 216 (Bankr. C.D. Ill. 2001). *See also In re Mann,* Case No. 03-82973, 2004 Bankr. LEXIS 2390 at ** 7-9 (Bankr. M.D.N.C. 2004) (holding that creditor ". . . must take measures and implement procedures to ensure that similar [violations of the automatic stay] do not occur" and awarding punitive damages); *In re Riddick,* 231 B.R. 265, 269 (Bankr. N.D. Ohio 1999) (awarding punitive damages for creditor's failure to develop procedures

to prevent violations of the automatic stay); *In re Perry*, Case No. 04-80461, 2004 WL 3510115, at *2 (Bankr. M.D.N.C. June 3, 2004) (holding punitive damages award was appropriate to deter creditor from future violations of the automatic stay).

Compelled mandatory arbitration of Plaintiffs' individual stay violation claims, as Goldman Sachs's motion contemplates, would thwart this purpose because it would hide the public record of the scope and scale of Goldman Sachs's stay violation practices behind the closed doors of confidential private arbitration proceedings. Given the frequency with which Plaintiffs allege Goldman Sachs is engaging in stay violations, preventing public disclosure of the scale of these practices would effectively encourage continued misconduct and invite other creditors with arbitration clauses in their contracts to follow suit, thereby seriously jeopardizing the objectives and efficacy of the Bankruptcy Code.

## II.    RELEVANT FACTS

Goldman Sachs repeatedly violated the automatic stay in Plaintiffs' Chapter 7 and Chapter 13 cases. *See* ECF 1. These violations were egregious and continued for extended time periods despite the fact that Goldman Sachs received numerous notices of Plaintiffs' bankruptcy cases. *Id.* at ¶¶ 17–50. As alleged by Plaintiffs, Goldman Sachs engaged in similar behavior in numerous other bankruptcy cases throughout the country. *Id.* at ¶¶ 51–54; *see also* ECF 1-17. Plaintiffs are currently aware of at least seven other lawsuits filed by consumer debtors against Goldman Sachs for nearly identical stay violations in the following states: Texas, California, Virginia, Alabama, and Kansas.[2]

---

[2]. *Captain v. Goldman Sachs Bank USA*, Adversary No. 23-03060-MVL, in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (alleging Goldman Sachs filed a lawsuit to collect a discharged debt, despite actual original knowledge and the bankruptcy and the debtor's counsel's later cease and desist letter); *Harris v. Goldman Sachs Bank USA*, Adversary No. 23-02058, in the United States Bankruptcy Court for the Eastern District of California, Sacramento Division (alleging that Goldman Sachs sought collection through emails and almost daily phone calls in violation of the automatic stay); *Garrett v. Goldman Sachs Bank USA*, Adversary No. 24-07003, in the United States Bankruptcy Court for the Western District of Virginia, Roanoke Division (alleging that Goldman Sachs

Plaintiff Rhea Ann Brown filed her Chapter 13 bankruptcy case on June 14, 2023. As outlined in the Complaint, Goldman Sachs first began violating the automatic stay in Ms. Brown's case by sending her a collection email on June 16, 2023—only two days after Ms. Brown filed her case—and continued sending her numerous additional emails, written demands and phone calls through at least December 20, 2023. ECF 1 at ¶¶ 22–31. Goldman Sachs also violated the automatic stay by threatening to report Ms. Brown's account as a charge-off to the credit reporting agencies. *Id*. at ¶ 32. The Bankruptcy Court confirmed Ms. Brown's Chapter 13 plan on September 1, 2023. Since that date, Ms. Brown has remained current under her Chapter 13 plan. The automatic stay remains in place in Ms. Brown's Chapter 13 case.

Plaintiff Kevin Maze filed his Chapter 7 bankruptcy case on November 19, 2023. Goldman Sachs violated the automatic stay in Mr. Maze's case on multiple occasions in January and February of 2024 by attempting to collect pre-petition debt through emails and phone calls. ECF 1 at ¶¶ 41–44. Goldman Sachs also violated the automatic stay by threatening to report Mr. Maze's account as a charge-off to the credit reporting agencies. *Id*. at ¶ 45.

Plaintiffs do not contest that they signed the Apple Card Customer Agreement.

## III.    ARGUMENTS & AUTHORITIES

The Court has the discretion and the authority to deny Goldman Sachs's motion to compel arbitration of Plaintiffs' constitutionally core stay violation claims. Exercising that discretion in

---

sent collection emails in violation of the automatic stay); *Buzuma v. Goldman Sachs Bank USA, d/b/a Marcus by Goldman Sachs* Adversary No. 22-06014, in the United States Bankruptcy Court for the Western District of Virginia, Roanoke Division (alleging that Goldman Sachs sent collection emails and billing statements in violation of the automatic stay); *Brown v. Goldman Sachs Bank USA Holdings, LLC*, Adversary No. 23-80114-CRJ, in the United States Bankruptcy Court for the Northern District of Alabama, Northern Division (alleging Goldman Sachs sent billing statements in violation of the automatic stay); *Horton v. Goldman Sachs Bank USA Holdings, LLC*, Adversary No. 24-80001-CRJ, in the United States Bankruptcy Court for the Northern District of Alabama, Northern Division (alleging Goldman Sachs debited Chapter 7 debtor's bank account in violation of the automatic stay); *Docuplex, Inc. v. Goldman Sachs Bank USA, d/b/a Marcus by Goldman Sachs*, Adversary No. 23-05008, United States Bankruptcy Court for District of Kansas (alleging Goldman Sachs called the Chapter 11 debtor's representative and sent statements demanding payment in violation of the automatic stay).

this case will best serve the interests of the Bankruptcy Code, including protecting debtors as they reorganize their affairs, and promoting uniformity of the law, as well as ease and centrality of administration. Preserving the protections of the automatic stay for debtors in bankruptcy is fundamental to the bankruptcy system, and the Court's duty to protect this critical feature of the bankruptcy process from abuse continues, regardless of the status of Plaintiffs' individual bankruptcy cases at the time litigation to enforce the automatic stay is commenced. Because this solemn responsibility to protect the automatic stay is so critical to the proper functioning of the bankruptcy process, the Federal Arbitration Act and the Bankruptcy Code inherently conflict, such that compelled arbitration of Plaintiffs' claims – whether individually or on a class basis – would be improper in this class action alleging widespread and systematic abuse of debtors in bankruptcy.

### a. *Because Plaintiffs' stay violation claims are constitutionally core, the Court has discretion and authority to deny Defendant's motion to compel arbitration.*

Plaintiffs' stay violation clam under 11 U.S. C. § 362(k)(1) is a constitutionally core proceeding because it derives directly from the Bankruptcy Code and can be brought only in the context of a bankruptcy case. "[A] cause of action is constitutionally core when it 'stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.'" *Allied Title Lending, LLC v. Taylor*, 420 F. Supp. 3d 436, 448 (E.D. Va. 2019) (quoting *Stern v. Marshall*, 564 U.S. 462, 499 (2011)). If a claim is a constitutionally core proceeding, the bankruptcy court has discretion to retain the proceeding and not enforce the terms of the parties' arbitration agreement. *Id.* at 448 (quoting *Moses v. CashCall, Inc*., 781 F.3d 63, 72 (4th Cir. 2015)) ("Arbitration of constitutionally core claims 'inherently conflict[s] with the purposes of the Bankruptcy Code,' and therefore a bankruptcy court is generally well within its discretion to refuse arbitration of constitutionally core claims."). Again, this discretion arises from the inherent conflict in allowing an arbitrator to resolve proceedings that are grounded in the Code itself or that are integral to the

debtor's reorganization efforts. *See In re Camberon Julius Xavier Banks*, 612 B.R. 167, 169 n. 1 (Bankr. S.C. 2020) (awarding punitive damages to deter future violations where, after filing its proof of claim in debtor's bankruptcy case, creditor repossessed and retained possession of debtor's vehicle in willful violation of the automatic stay). The "automatic stay represents 'one of the fundamental debtor protections provided by the bankruptcy laws.'" *United States v. Gold (In re Avis)*, 178 F.3d 718, 721 (4th Cir. 1999) (quoting *Midatlantic Nat'l Bank v N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986)) (finding that the automatic stay prevented the IRS from obtaining a tax lien on debtor's property after debtor's bankruptcy petition was filed). Goldman Sachs admits that Plaintiffs' claim is a core proceeding. *See* ECF 15 at p. 11.

In *CashCall*, the Fourth Circuit confirmed that the bankruptcy court has discretion to withhold arbitration of constitutionally core bankruptcy matters. *CashCall*, 781 F.3d at 72 (affirming Bankruptcy Court's decision not to compel arbitration of a Chapter 13 debtor's objection to a creditor's proofs of claim filed in their bankruptcy that was allegedly based on usurious loans). Importantly, the Fourth Circuit recognized that Congressional intent to authorize waiver of mandatory arbitration in the bankruptcy context could be deduced from the "inherent conflict between arbitration and the statute's underlying purposes." *Id*. at 71-72 (quoting *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987)). "Like any statutory directive," the FAA's "mandate may be overridden by contrary congressional demand." *Carmac Fund L.P. v. McPherson (In re McPherson)*, 630 B.R. 160, 167 (Bankr. M.D. June 1, 2021) (quoting *McMahon*, 482 U.S. at 226).

Congress' intention to consolidate core bankruptcy matters within the jurisdiction of the bankruptcy court is clear: by enacting the Bankruptcy Code, Congress granted comprehensive jurisdiction to bankruptcy courts to deal efficiently and expeditiously with core bankruptcy

matters. *See CashCall*, 781 F.3d at 71 (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995)). This case implicates the Court's duty to implement the provisions of the Bankruptcy Code and its expansive authority to carry out that duty under Section 105(a) of the Bankruptcy Code.

Section 105(a) gives broad authority to bankruptcy courts to "issue *any* order necessary ... to carry out the provisions of the bankruptcy code." *In re Walters*, 868 F.2d 665, 669 (4th Cir. 1989) (emphasis added). *See also Harlow v. Wells Fargo & Co. (In re Harlow)*, No. 17-71487, 2022 WL 17586716, at *28, n. 11 (Bankr. W.D. Va. Dec. 12, 2022) (recognizing the bankruptcy court's inherent § 105(a) authority can be used to remedy abuse of bankruptcy process in context of creditor's alleged filing of false mortgage payment change notices). This is especially the case when, as here, a creditor is attempting to flout the Bankruptcy Code for its own illegal purposes.[3] *See Rodriguez v. Countrywide (In re Rodriguez),* 396 B.R. 458, 459 (Bankr. S.D. Tex. 2008) (finding § 105(a) extends to sanctioning abuses of the bankruptcy process through maneuvers or schemes which would have the effect of undermining the integrity of the bankruptcy system.). This Court has appropriately held that violations of the automatic stay are punishable as contempt of court:

> A violation of the stay is punishable as contempt of court. Most courts will impose contempt sanctions for a knowing and willful violation of a court order, and the automatic stay is considered as equivalent to a court order. If the conduct is willful,

---

[3] "[T]he Bankruptcy Code, both in general structure and in specific provisions, authorizes bankruptcy courts to prevent the use of the bankruptcy process to achieve illicit objectives." *In re Kestell*, 99 F.3d 146, 149 (4th Cir. 1996); *see also Chicora Life Ctr., LC v. UCF 1 Trust 1 (In re Chicora Life Ctr., LC)*, 553 B.R. 61, 67 (Bankr. D. S.C. 2016) ("The provisions of the Bankruptcy Code, including the equitable powers of the bankruptcy court under § 105, are designed to protect the public interest.") (citing *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998). To that end, Section 105(a) has been interpreted to instill bankruptcy courts with the civil contempt power. *See In re Walters,* 868 F.2d 665, 669 (4th Cir. 1989) (affirming the bankruptcy court's order holding in contempt an attorney who failed to comply with an order to refund unapproved attorney's fees). Thus, "[b]ankruptcy courts have inherent and statutory power to police the conduct of the parties who appear before them and to impose sanctions on those parties who abuse the judicial process." *In re Banner*, No. 15-31761, 2016 WL 3251886, at *7 (Bankr. W.D. N.C. June 2, 2016) (quotation marks and citation omitted). *See Walker v. UpRight Law (In re Walker)*, 615 B.R. 770, 783–84 (Bankr. D. S.C. 2020).

even if based upon advice of counsel, contempt is an appropriate remedy. When a violation of the stay is inadvertent, contempt is not an appropriate remedy. Nevertheless, the creditor has a duty to undo actions taken in violation of the automatic stay. Failure to undo a technical violation may elevate the violation to a willful one.

*In re Harlow,* 2022 WL 17586716, at *10, citing 3 *Collier on Bankruptcy* ¶ 362.12[2] (16th ed.) (footnotes omitted).

> **b.    *The Court should exercise its discretion—especially in this class case—to deny Defendant's motion to compel arbitration of Plaintiffs' constitutionally core claim because doing so best serves the interests of the Bankruptcy Code.***

Moreover, the Court's contempt powers are fundamental to protecting the authority of the bankruptcy court, and the bankruptcy process it oversees, such that mandatory arbitration of stay violations presents an inherent conflict with the Bankruptcy Code. *See In re Grant*, 281 B.R. at 725 (holding "[a]n arbitrator cannot be allowed to take the role of the protector of the judicial process. . ." where Chapter 7 debtor's claims against manufactured home creditor for violations of the automatic stay and discharge order were core proceedings). By immediately providing the debtor relief and protecting the estate from being looted by creditors, the automatic stay is central to both the liquidation process and the reorganization process. *Walker v. Gotcha Towing & Recovery, LLC (In re Walker)*, 551 B.R. 679, 689 (Bankr. M.D. Ga. 2016).

Bankruptcy courts can address stay violations *sua sponte*, and in fact some courts have held that bankruptcy courts *must* address stay violations *sua sponte. Elder-Beerman Stores Corp. v. Thomasville Furniture Indus. (In re Elder-Beerman Stores Corp.),* 195 B.R. 1019, 1023 (Bankr. S.D. Ohio 1996) (collecting cases); *222 Liberty Assoc. v. Prescott Forbes Real Estate Corp. (In re 222 Liberty Assoc.)*, 110 B.R. 196, 200 (Bankr. E.D. Pa. 1990) (collecting cases and indicating the court must raise stay violations *sua sponte*). As the Court explained in *Walker*, "[i]t makes no sense to say that a stay violation, which undermines the jurisdiction and dignity of the court and is

punishable *sua sponte* by contempt, must be sent to an arbitrator for adjudication." *In re Walker*, 551 B.R. at 693.

The general structure of the Bankruptcy Code, as well as its specific provisions, authorizes and imposes a duty on bankruptcy courts to enforce the automatic stay and all other bankruptcy processes. In particular, violations of the automatic stay are punishable as contempt of court. *In re Harlow*, 2022 WL at *10 (citing 3 Collier on Bankruptcy ¶ 362.12[2] (16th ed.)); *see also In re Miszko*, 627 B.R. 809, 819 (Bankr. S.D.N.Y. 2021) (finding that debtor's counsel violated the automatic stay by taking fees from escrowed estate funds and awarding monetary damages for this abuse of process). Forcing Plaintiffs' claims into arbitration would strip this Court of its civil contempt power to police certain creditors when they violate the stay, undermining its ability to uniformly enforce the provisions of the Bankruptcy Code and to prevent abuses of bankruptcy processes – including maneuvers and schemes such as systematically violating the automatic stay while insisting on mandatory arbitration of debtors' efforts to obtain relief for these violations.

1.   ***Denial of Defendant's motion to compel arbitration is consistent with uniform nationwide enforcement of the Bankruptcy Code, as contemplated by the Constitution's Bankruptcy Clause.***

The so-called "Bankruptcy Clause" of the Constitution expressly provides Congress with the power to establish "*uniform laws* on the subject of bankruptcies throughout the United States[.]" U.S. Const. Art. I, Sec. 8 (emphasis added). In *Central Virginia Community College v. Katz*, 546 U.S. 356 (2006), the Supreme Court acknowledged that the Bankruptcy Clause provides Congress the power to not only enact bankruptcy laws, but the power to ensure uniformity in the application of such laws. *See* 546 U.S. 356, 376 at fn 13. Mandating non-public individual arbitrations of Plaintiffs' stay violation claims by unspecialized and unaccountable private arbitrators undermines the Constitution's intent to ensure that the Bankruptcy Code is enforced

uniformly. Especially in the context of this putative class action, outsourcing litigation of Defendant's violations of the automatic stay to separate individual arbitrations would undermine the uniform enforcement of the provisions and underlying purposes of the Bankruptcy Code.

> **2.** ***The automatic stay is the key mechanism in the Bankruptcy Code that allows the bankruptcy process to function as Congress intended, and outsourcing its enforcement to private arbitration would undermine its efficiency and pose an inherent conflict with the Bankruptcy Code's underlying purpose.***

The automatic stay (and its enforceability in bankruptcy court) is the foundation that allows the bankruptcy process to function; without the protection of the automatic stay, debtors are vulnerable to abuse, which undermines their ability to obtain the fresh start that the Bankruptcy Code was intended to provide. As noted in *In re Seaton*, 462 B.R. 582 (Bankr. E.D. Va. 2011):

> The automatic stay is a bedrock principle upon which the Code is built; the importance of § 362 cannot be over-emphasized. *Grady v. A.H. Robins Co.*, 839 F.2d 198, 200 (4th Cir. 1988). "The purpose of the automatic stay, in addition to protecting the relative position of creditors, is to shield the debtor from financial pressure during the pendency of the bankruptcy proceeding." *Winters By and Through McMahon v. George Mason Bank*, 94 F.3d 130, 133 (4th Cir.1996) (citation omitted). The automatic stay provides the debtor a breathing spell from creditors, affording the debtor time to reorganize. *Grady v. A.H. Robins Co.*, 839 F.2d at 200 (quoting House Report No. 95-595, 95th Cong. 1st Sess. 340-1 (1977)). Thus, the purpose of the automatic stay is two-fold: to preserve the relative positions and rights of creditors as established by the Bankruptcy Code and to protect the debtor, individually, from collection activities.

462 B.R. at 591, quoting *In re Garner*, Case No. 09-81998, 2010 Bankr. LEXIS 721, 2010 WL 890406, at *2 (Bankr. M.D.N.C. Mar. 9, 2010) (unreported decision). *See also Jones v. Tri-City Auto Sales (In re Jones)*, 2012 WL 5993760 (Bankr. E.D. Va. 2012).

As Congress recognized, the automatic stay does not just protect an individual debtor from creditors, it serves multiple systemic interests of the bankruptcy process.[4] *See Rushing v. Green*

---

[4] As discussed above, Congress, in passing the Bankruptcy Code, made this abundantly clear:

*Tree Servicing, LLC (In re Rushing)*, 443 B.R. 85, 97-98 (Bankr. E.D. Tex. 2010) ("[A] stay violation is not just a private injury. It strikes at the entire bankruptcy system and all parties for whom it was designed.").

### c. *Individual creditors' contractual rights, including arbitration clauses, must give way to allow the bankruptcy process to function properly.*

Whereas arbitration is merely a matter of contract between parties, the bankruptcy system implicates interests far broader than the private rights of the two parties to the contract in question. It is therefore not unusual for debtors' pre-petition contractual obligations, particularly those dictating forum or waiving the protections of the automatic stay, for example, to be modified or even ignored in a bankruptcy case.[5] Similarly, "to require arbitration of a stay violation does not

---

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy. The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claim in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

H.R. Rep. No. 95-595, at 340, *reprinted in* 1978 U.S.C.C.A.N. at 6296-97.

Congress also stated:

The stay is the first part of bankruptcy relief, for it gives the debtor a respite from the forces that led him to bankruptcy. Frequently, a consumer debtor is severely harassed by his creditors when he falls behind in payments on loans. The harassment takes the form of abusive phone calls at all hours, including at work, threats of court action, attacks on the debtor's reputation, and so on. The automatic stay at the commencement of the case takes the pressure off the debtor. Once the debtor has commenced the case, all creditors' rights against the debtor become rights against the estate. Creditors must seek satisfaction of their claims from the estate. The automatic stay recognizes this by preventing creditors from pursuing the debtor.

*Id.* at 125-26, *reprinted in* 1978 U.S.C.C.A.N. at 6086-87.

[5] *See, e.g., Mercury Masonry Corp. v. Terminal Constr. Corp. (In re Mercury Masonry Corp.)*, 114 B.R. 35, 39 (Bankr. S.D.N.Y. 1990) ("[E]nforcement of the forum selection clause would violate the public's interest in centralizing bankruptcy proceedings in the bankruptcy court where the case is pending."); *Wheeling-Pittsburgh Steel Corp. v. Blue Cross & Blue Shield of W. Va., Inc. (In re Wheeling-Pittsburgh Steel Corp.)*, 108 B.R. 82, 85 (Bankr. W.D. Pa. 1989) ("Public policy and inconvenience require us to deny enforcement of Blue Cross's forum selection clause."); *Banque Francaise du Commerce Exterieur v. Rio Grande Trading, Inc.*, 17 B.R. 134 (Bankr. S.D. Tex. 1981) ("It would be contrary to the theme of the Bankruptcy Reform Act to permit parties by agreement to defeat the jurisdiction of the

---

serve the core purpose of the FAA and runs roughshod over the considerations that influence bankruptcy courts not to enforce similar pre-petition contractual provisions." *In re Walker*, 551 B.R. at 691. The FAA simply places arbitration agreements "on equal footing with other contracts," no more, no less. *Taylor v. Allied Title Lending, LLC*, 594 B.R. 643, 650 (Bankr. E.D. Va. 2018) (citing *AT&T Mobility*, 563 U.S. at 339 (2011)). Where, as here, the arbitration clause conflicts with the provisions and purposes of the Bankruptcy Code, it deserves no more deference than any other contractual provision and thus should not be enforced.

    **d.**    ***Regardless of the status of Plaintiffs' bankruptcy cases at the time this lawsuit was filed, denial of the motion to compel arbitration in the context of this class action seeking redress for Defendant's widespread pattern of willful stay violations best serves the interests of the bankruptcy process.***

Goldman Sachs's motion to impose mandatory arbitration of Plaintiffs' and the putative class members' uniform automatic stay violation claims relies exclusively on the reasoning in *MBNA America Bank, N.A. v. Hill*, 436 F.3d. 104 (2d Cir. 2006), a non-precedential decision from the Second Circuit. Plaintiffs respectfully submit that the *Hill* opinion is wrongly decided, incompatible with applicable Fourth Circuit precedent, and dangerously short-sighted in its reasoning. In particular, *Hill* holds that compelling Chapter 7 bankruptcy debtors (like Mr. Maze in this case) to resort to arbitration to enforce the automatic stay after their case has been discharged is appropriate because there is no longer a bankruptcy-related purpose that would be served, since the debtor's case has ended. Yet, that is precisely what *Hill* misunderstands: the brevity of the typical Chapter 7 process is such that virtually no debtor's Chapter 7 case would survive long

---

court. . . . [C]ircumstances could exist under which the bankruptcy court will enforce such a clause and abstain from hearing a case, but not here."); *see also Ellwood City Iron & Wire Co. v. Flakt, Inc. (In re Ellwood City Iron & Wire Co.)*, 59 B.R. 53, 55 (Bankr. W.D. Pa. 1986) (recognizing heightened importance of ***bankruptcy*** forum after passage of Bankruptcy Amendments and Federal Judgeship Act of 1984). *See also, e.g., Matter of Pease*, 195 B.R. 431, 435 (Bankr. D. Neb. 1996) ("[A]ny attempt by a creditor in a private prebankruptcy agreement to opt out of the collective consequences of a debtor's future bankruptcy filing is generally unenforceable.").

enough for the bankruptcy court to justify enforcing the automatic stay under *Hill*'s reasoning. Consequently, any creditor with an arbitration clause (*i.e.* most Chapter 7 consumer debtors' creditors) could abuse Chapter 7 debtors in violation of the automatic stay without fear of any meaningful consequences from the bankruptcy court, secure in the knowledge that, at worst, they could be forced to defend themselves before an unspecialized private arbitrator with no stake in ensuring the proper functioning of the bankruptcy process.

Attempting to extend *Hill*'s faulty reasoning to active Chapter 13 cases, Goldman Sachs argues that because Plaintiff Brown's Chapter 13 "discharge plan" (sic) has been confirmed, compelling arbitration will not disrupt the reorganization process. ECF 15 at p. 13. This argument ignores the fact that the automatic stay is still in place in Ms. Brown's Chapter 13 case, and the Court and Chapter 13 Trustee are continuing to actively administer her case as she continues to perform under her plan. Defendant cites no authority for the proposition that the automatic stay is not in effect throughout the pendency of a Chapter 13 debtor's case; indeed, there is no such authority. Moreover, if Goldman Sachs's violations of the automatic stay were successful in coercing debtors to make payments outside of their confirmed plans, Goldman Sachs could cause debtors to become delinquent, potentially resulting in dismissal of their Chapter 13 cases. This would not just harm the debtors, but also their other creditors, who would no longer receive plan distributions and would have to go back to competing with other creditors for the debtors' limited resources.

Accordingly, resolution of Plaintiffs' constitutionally core stay violation claims by the bankruptcy court is appropriate, regardless of whether Defendant's violation occurred in a Chapter 7 or Chapter 13 case, and regardless of the status of the Plaintiff's case at the time the litigation was filed.

**e.** ***The Bankruptcy Code cannot be reconciled with the FAA in the context of enforcement of the automatic stay.***

In Chapter 13 cases, the debtor needs "*court* supervision and protection, to develop *and perform* under a plan for the repayment of his debts over an extended period." H.R. Rep. No. 95-595, at 118, *reprinted in* 1978 U.S.C.C.A.N. at 6079 (emphasis added). "This protection relieves the debtor from indirect and direct pressures from creditors, and enables him to support himself and his dependents while repaying his creditors at the same time." *Id.* Congress has given the Bankruptcy Court the task of administering the protections of the automatic stay. *In re Walker,* 551 B.R at 690.

Furthermore, as pointed out in *Walker*, the fact that the FAA and the Bankruptcy Code are each heavily procedural in nature creates a likelihood of tension between the two statutes. *See In re Walker,* 551 B.R. at 690, citing *Mitsubishi Motors*, 473 U.S. at 628 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."). "In evaluating a tension between the procedures established by these two bodies of law, courts must be careful not to use a broad brush favoring arbitration to paint over the intricate bankruptcy process crafted by Congress. To require arbitration in the stay violation context does just that." *In re Walker*, 551 B.R. at 690.

**f.** ***Bankruptcy courts are specially equipped to address stay violations, but arbitrators are not.***

The bankruptcy court is a specialized court that has the knowledge, duty, and incentive to protect the bankruptcy system. *See* H.R. Rep. No. 95-595, at 20, *reprinted in* 1978 U.S.C.C.A.N. at 5980 ("In bankruptcy, specialization is necessary to the functioning of the system.").[6] Congress

---

[6] While Congress has had to rework the jurisdictional framework to address constitutional concerns since the passage of the Bankruptcy Code, these revisions have consistently demonstrated that "Congress intended and gave to bankruptcy courts broad jurisdictional authority, consistent with [constitutional limitations], to adjudicate all matters

constructed the bankruptcy system in a manner that ensures that core matters, which "typically involve matters in which the interests of the federal bankruptcy system are most critical," such as the automatic stay, are generally determined by the specialized bankruptcy court rather than a "generalist forum."[7] *In re Walker*, 551 B.R. at 693 (citing *Ames Dep't Stores, Inc. v. Lumbermens Mut. Cas. Co. (In re Ames Dep't Stores, Inc.)*, 542 B.R. 121, 137 (Bankr. S.D.N.Y. 2015)). In doing so, Congress recognized the bankruptcy court's experience,[8] and, more importantly, vested interest,[9] in ruling in a manner that makes the bankruptcy system functional.

Determinations regarding the automatic stay are core matters that heavily implicate Congress' concerns in setting up the bankruptcy court system to be a uniform, functional, and judicially supervised system, managed by judges with a specialized interest in determining core matters. *In re Walker*, 551 B.R. at 693 (citing *In re Merrill*, 343 B.R. at 9 n.10 ("[A]pplying and enforcing the stay (and related provisions) is [not] a simple exercise where a bankruptcy judge's experience and training are not required.")); *see also In re Rushing*, 443 B.R at 97 ("A bankruptcy court has a unique and compelling interest in insuring obedience to the restrictions imposed by the automatic stay."). Bankruptcy courts deal with stay violations routinely and thus have the opportunity to observe patterns by creditors within an industry, and can make rulings that benefit

---

demonstrated to affect the liquidation of assets or the debtor-creditor relationship." *Allard v. Benjamin (In re DeLorean Motor Co.)*, 49 B.R. 900, 909 (Bankr. E.D. Mich. 1985).

[7] *See* 28 U.S.C. § 157. *Cf. In re White Mountain Mining Co*., 403 F.3d 164, 169 (4th Cir. 2005) (". . . the statutory text [of 28 U.S.C. § 157] giving bankruptcy courts core-issue jurisdiction reveals a congressional intent to choose those courts in exclusive preference to all other adjudicative bodies, including boards of arbitration, to decide core claims.").

[8] H.R. Rep. No. 95-595, at 20, *reprinted in* 1978 U.S.C.C.A.N. at 5980 ("The reason that the bankruptcy court system works as well as it does today is because the trial judges are specialists, experienced in handling the problems that arise. They are experienced because they handle exclusively bankruptcy cases.").

[9] H.R. Rep. No. 95-595, at 4, *reprinted in* 1978 U.S.C.C.A.N. at 5965 (explaining that the Code was designed to prevent the bankruptcy process from having to "operate under the supervision of an unconcerned district court"); *Id.* at 14-15, *reprinted in* 1978 U.S.C.C.A.N. at 5975-76 (describing reasons why disputes arising in bankruptcy administration should be addressed by bankruptcy court, not district court).

the entire bankruptcy process. *In re Rushing*, 443 B.R. at 98 ("Punishment [of a stay violation] is necessary not just to compensate a party, but to insure future compliance with the judicial system.") (quoting *In re Grant*, 281 B.R. at 725)); *In re Merrill*, 343 B.R. at 9 ("[O]rdering arbitration of [the debtor's] stay violation claim would conflict with this court's duty to safeguard the automatic stay's fundamental protection for debtors."). This kind of perspective cannot be expected from an unspecialized private arbitrator. *In re Grant, 281 B.R. at 725* ("Allowing arbitration of alleged violations of court authority would leave nonjudicial third parties to punish abuse of the judicial system.").

## IV.   CONCLUSION

For the foregoing reasons, Goldman Sachs's motion to compel arbitration should be denied, particularly because arbitration of Plaintiffs' stay violation claims would inherently and irreconcilably conflict with the provisions and purposes of the Bankruptcy Code.

**WHEREFORE PREMISES CONSIDERED,** Plaintiffs respectfully pray that this Court deny Defendant's Motion to Compel Arbitration in its entirety, and grant all such other relief to which Plaintiffs are justly entitled.

Respectfully submitted,

*/s/ Theodore O. Bartholow III ("Thad")*
Theodore O. Bartholow III ("Thad")
(*Admitted Pro Hac Vice*)
Texas State Bar No. 24062602
Karen L. Kellett
(*Admitted Pro Hac Vice*)
Texas State Bar No. 11199520
KELLETT & BARTHOLOW PLLC
11300 N. Central Expressway, Suite 301
Dallas, TX 75243
Tel.: (214) 696-9000
Fax: (214) 696-9001
thad@kblawtx.com

<u>kkellett@kblawtx.com</u>

Malissa L. Giles
Virginia State Bar No. 33955
Tracy Giles
Virginia State Bar No. 34594
Giles & Lambert, PC
PO Box 2780
Roanoke, VA 24001
Tel: (540) 981-9000
mgiles@gileslambert.com
GILES & LAMBERT, PC


ATTORNEYS FOR THE PLAINTIFFS




## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that he served the foregoing Response on all counsel for Defendant in this case on June 5, 2024, via electronic service through ECF.


<u>/s/ Theodore O. Bartholow III ("Thad")</u>
Theodore O. Bartholow III ("Thad")