# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | |
|---|---|
| IN RE:  RHEA ANN BROWN )<br>)<br>Debtor.            )<br>_____) | Case No.  23-70426<br>Chapter 13 |
| )<br>RHEA ANN BROWN                 )<br>)<br>and                                           )<br>)<br>GREGORY KEVIN MAZE          )<br>)<br>on behalf of themselves and all  )<br>others similarly-situated,          )<br>)<br>                     Plaintiffs,        )<br>      v.                                    )<br>                                             )<br>GOLDMAN SACHS BANK USA   )<br>d/b/a MARCUS BY GOLDMAN SACHS )<br>                                             )<br>                     Defendant.       ) | Adversary Proceeding<br>No. 24-07009 |

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT GOLDMAN SACHS BANK USA'S MOTION TO COMPEL ARBITRATION AND STAY ACTION**

## I.     INTRODUCTION

Plaintiffs' *Response to Defendant's Motion to Compel Arbitration* (the "Opposition" or "Opp.") ignores the fundamental reasons why the Court should hold Plaintiffs to their agreement to pursue these claims in arbitration. Plaintiffs do not dispute that the Agreement is valid and binding,[1] or that the plain terms of the Agreement's Arbitration Provision cover Plaintiffs' claims here. And they also do not dispute that their own bankruptcies either have been discharged or confirmed, meaning that sending this dispute to arbitration would not jeopardize an efficient reorganization because it is essentially a dispute to recover money. A claim for damages is precisely the sort of dispute that can be, and often is, resolved in arbitration, and despite bearing the burden to prove that Congress somehow intended to preclude arbitration of these claims, Plaintiffs fail to offer any compelling justification to depart from either the plain language of their Agreements or the Federal Arbitration Act's ("FAA") strong presumption in favor of arbitration.

*First*, Plaintiffs spend a significant portion of the Opposition needlessly arguing a point that GS Bank does not contest—*i.e.*, that because the alleged stay violations are "core" bankruptcy matters, the Court has discretion in deciding whether or not to send the claims to arbitration. But as the Motion makes clear, "[t]he core/non-core distinction . . . is not mechanically dispositive in deciding whether a bankruptcy judge may refuse to send a claim to arbitration." *In re Geostellar, Inc.*, 614 B.R. 669, 674 (Bankr. N.D. W. Va. 2020) (citation omitted). Instead, core claims are arbitrable where doing so would not undermine the purpose of the Bankruptcy Code. This is the case here because (i) Plaintiffs' bankruptcy cases either have been discharged or had a plan confirmed, (ii) the injunctive relief sought by Plaintiffs is illusory as it entirely duplicates the

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them within the *Motion of Defendant Goldman Sachs Bank USA to Compel Arbitration and Stay Action* (Dkt. No. 15, the "Motion" or "Mot.").

automatic stay and/or discharge injunction already in place, and (iii) an arbitrator is fully capable of determining liability and damages stemming from the alleged communications. There is nothing in the Bankruptcy Code that should prevent arbitration of claims like the ones Plaintiffs bring here, which can be fully litigated in arbitration. Mot. at 11-13 (citing cases).

*Second*, Plaintiffs largely ignore that the U.S. Supreme Court has repeatedly emphasized the strong federal policy favoring arbitration, including its explicit recognition that federal statutory claims are arbitrable. *Id*. at 10. Plaintiffs do not offer any basis for the Court to depart from this precedent, instead raising policy points that the Supreme Court explicitly has rejected. For instance, Plaintiffs argue that sending the claim to arbitration would allow creditors to engage in misconduct, but the Supreme Court concluded that the deterrent effect of a federal statute exists equally in arbitration, and that is true here because GS Bank faces the exact same potential damages—including punitive damages—in a private arbitration. Likewise, while Plaintiffs argue that their attempt to pursue class claims makes arbitration improper, the Supreme Court has repeatedly rejected the argument that an arbitration clause can be disregarded simply because the arbitration provision precludes class claims.

Here, in particular, Plaintiffs are essentially seeking only money damages, and the inclusion of former debtors nationwide in the proposed class (both as a lead plaintiff and in the class definition) highlights that this action is a standalone damages claim that will not jeopardize efficient administration of any particular debtor's estate, let alone debtors in this jurisdiction. This case, therefore, lies squarely within the Second Circuit's decision in *MBNA America Bank, N.A. v. Hill*, 436 F.3d. 104 (2d Cir. 2006). Plaintiffs do not cite any case to the contrary, leaving *Hill* as the only case cited by either party that considers the exact issue presented on this Motion: whether it is appropriate to arbitrate an automatic stay claim brought as a class action that includes both

2

current and former debtors. As in *Hill*, arbitration of Plaintiffs' claims—which allege a relatively minor violation of the automatic stay via the transmission of discrete automated e-mails and phone calls—would not impede the efficient administration of Plaintiffs' estates given that Plaintiffs' bankruptcy cases have already been discharged or had a plan confirmed.

Accordingly, GS Bank respectfully requests that this Court grant its motion to compel Plaintiffs to arbitrate their claims against GS Bank, and stay this action pending arbitration.

## II. ARGUMENT

**A.  This Court Should Exercise Its Discretion To Enforce The Parties' Agreement As The Only Question For A Tribunal To Resolve Is Whether Plaintiffs Are Entitled To Damages**

The burden to prove "that Congress intended to preclude" arbitration of a particular statutory claim "is on the party opposing arbitration." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 227 (1987); *accord Moses v. CashCall, Inc.*, 781 F.3d 63, 71 (4th Cir. 2015). But instead of attempting to carry their burden, Plaintiffs spend much of their Opposition seeking to convince the Court of something that is uncontested. Opp. at 9-12. GS Bank does not dispute that alleged violations of the automatic stay are deemed "core" proceedings under the Bankruptcy Code and, as a result, the Court has discretion regarding whether or not to send the claims to arbitration. Mot. at 11. But "[t]he core/non-core distinction . . . is not mechanically dispositive in deciding whether a bankruptcy judge may refuse to send a claim to arbitration." *Geostellar*, 614 B.R. at 674 (citation omitted). Instead, as explained in the Motion, "what matters fundamentally is whether compelling arbitration for a claim would inherently undermine the Bankruptcy Code's animating purpose of facilitating the efficient reorganization of an estate through the 'centralization of disputes concerning a debtor's legal obligations.'" *Id*. Here, the answer is no for several reasons.

3

Most notably, because Plaintiffs' bankruptcy cases have either been discharged or had a plan confirmed, Plaintiffs have come nowhere close to demonstrating that arbitrating their claims will jeopardize the ongoing administration of their bankrupt estates. Mot. at 5. Indeed, Plaintiffs' claims are really only about monetary relief. Plaintiffs' token request for an injunction is not meaningful given that: (i) one of the two named plaintiffs (Maze) already received a discharge and the corresponding injunctive relief provided by the discharge order and section 524(a) of the Bankruptcy Code is identical to what he seeks here, and (ii) the other named plaintiff's (Brown) request for injunctive relief—*i.e.,* an injunction "enjoining Goldman Sachs from engaging in the acts and practices described [in the Complaint]," Compl. ¶ 75—is duplicative of the still in-effect automatic stay provision, Mot. at 14 n.6. In any event, to the extent injunctive relief is somehow relevant rather than redundant, the Agreement permits an arbitrator to issue injunctive relief. *See Miller v. Equifirst Corp. of WV*, 2006 WL 2571634, at *16 (S.D. W. Va. Sept. 5, 2006) (compelling arbitration where "[t]here is nothing in the arbitration agreement that would prohibit an arbitrator from awarding declaratory or injunctive relief"); *see also Declaration of Jeffrey Adams in Support of Motion to Compel Arbitration and Stay Action*, Dkt No. 15-1 ("Adams Decl."), Ex. A at 17 (the parties' Agreement provides that "the arbitrator will be empowered to grant whatever relief would be available in court under law or in equity").

Thus, if the arbitrator finds a violation, the only real remedy for a tribunal to address is whether Plaintiffs are entitled to recover any damages and, if so, what amount. And contrary to Plaintiffs' suggestion, Opp. at 6-7, Plaintiffs are not precluded from requesting punitive damages in arbitration. Adams Decl., Ex. A at 17 (allowing arbitrator to grant any relief "available in court"). Plaintiffs do not offer any explanation for how resolving their claim for money damages will impede the successful rehabilitation of Plaintiffs' estates. As such, the Court should exercise

4

its discretion to respect the parties' Agreement. *See, e.g.*, *Hill*, 436 F.3d at 106 (compelling arbitration where plaintiffs sought punitive damages for alleged systematic violations of the Bankruptcy Code's automatic stay provision); *In re TexStyle LLC*, 2012 WL 1345646, at *2, 9 (Bankr. S.D.N.Y. Apr. 17, 2012) (compelling arbitration of claim seeking "damages and sanctions for willful violation of the automatic stay"); *Bigelow v. Green Tree Fin. Servicing Corp.*, 2000 WL 33596476, at *2, 6 (E.D. Cal. 2000) (compelling arbitration so arbitrator could determine "damages, sanctions, and costs associated with violations of the [Bankruptcy] Code," including "violations of the automatic stay").

Plaintiffs' claim that it is "not unusual for debtors' pre-petition contractual obligations, particularly those dictating forum or waiving the protections of the automatic stay, for example, to be modified or even ignored in a bankruptcy case," Opp. at 15, also is misplaced. The decades-old cases they cite do not involve arbitration clauses, and so these decisions do not implicate the strong federal policy in favor of arbitration, let alone reflect more recent precedent emphasizing its importance.[2] Mot. at 10-11. In any event, even Plaintiffs' case law acknowledges that "many cases uphold" pre-petition contractual obligations, particularly when doing so would not be "unreasonable and unjust." *Mercury Masonry Corp.*, 114 B.R. at 39; *see also Banque Francaise du Commerce Exterieur*, 17 B.R. 134 (acknowledging "forum selection clauses are specifically enforceable unless it can be shown that enforcement would be unreasonable or unjust") (citing *M/S Bremen v. Zapata Offshore Co.*, 407 U.S. 1 (1972)). Compelling arbitration under the circumstances would not be unreasonable or unjust given that this is a case fundamentally about

---

[2] *See generally Mercury Masonry Corp. v. Terminal Constr. Corp. (In re Mercury Masonry Corp.)*, 114 B.R. 35 (Bankr. S.D.N.Y. 1990); *Wheeling-Pittsburgh Steel Corp. v. Blue Cross & Blue Shield of W. Va., Inc. (In re Wheeling-Pittsburgh Steel Corp.)*, 108 B.R. 82 (Bankr. W.D. Pa. 1989); *Banque Francaise du Commerce Exterieur v. Rio Grande Trading, Inc.*, 17 B.R. 134 (Bankr. S.D. Tex. 1981); *Ellwood City Iron & Wire Co. v. Flakt, Inc. (In re Ellwood City Iron & Wire Co.)*, 59 B.R. 53 (Bankr. W.D. Pa. 1986); *Matter of Pease*, 195 B.R. 431 (Bankr. D. Neb. 1996).

5

damages, Plaintiffs' bankruptcies have already been discharged or have a confirmed plan in place, and the FAA presumptively requires enforcement of the parties' Agreement.

B. **The *Hill* Decision—And Other Similar Precedent—Is On Point And Authoritative**

Plaintiffs inaccurately assert that GS Bank "relies exclusively" on the reasoning in *MBNA America Bank, N.A. v. Hill*, 436 F.3d. 104 (2d Cir. 2006), to argue in favor of arbitration of the automatic stay claim, but Plaintiffs do not dispute that *Hill* addresses exactly the issue in this case (arbitration of a purported class action that includes both current and former debtors alleging violations of the automatic stay). Plaintiffs fail to cite ***any*** case considering that issue (much less one reaching a different conclusion than *Hill*), leaving *Hill* as the only on-point authority cited by either side. Opp. at 16-17. And, regardless, in addition to *Hill*, the Motion cites multiple other cases that allowed arbitration of alleged automatic stay violations, including *In re TexStyle,* 2012 WL 1345646, at *9 and *Bigelow*, 2000 WL 33596476, at *6. Plaintiffs do not address or even acknowledge these cases.

Instead, Plaintiffs just blankly state, without any authority or analysis, that the *Hill* decision is "wrongly decided, incompatible with applicable Fourth Circuit precedent, and dangerously short-sighted in its reasoning." Opp. at 16. This is incorrect and, tellingly, Plaintiffs do not even identify the "Fourth Circuit precedent" with which *Hill* is allegedly incompatible. *See generally* Opp. *Hill* is on all fours with this case. Like the debtor in *Hill*, Maze's bankruptcy case is closed and he has been discharged, and Brown's plan has been confirmed. *Hill*, 436 F.3d at 110; *see also In re Trevino*, 599 B.R. 526, 547 (Bankr. S.D. Tex. 2019) ("Sending Debtors' [automatic stay] claims to arbitration would not jeopardize the important purposes that bankruptcy serves because Debtors' bankruptcy case is already closed."); *In re Banks*, 549 B.R. 257, 268 (Bankr. D. Or. 2016) (compelling arbitration of automatic stay claim because it did "not conflict with any fundamental purpose of the Bankruptcy Code" where debtor's Chapter 13 plan was already confirmed). As in

6

*Hill*, Plaintiffs' inclusion of former debtors in the proposed class demonstrates that the proceeding is principally about monetary damages, and confirms that this case is not about ongoing protection of the debtors and administration of their cases. *Hill*, 436 F.3d at 110. (noting the fact that the putative class included former debtors revealed the claims were principally about money damages); *see also Campos v. Bluestem Brands, Inc.*, 2016 WL 297429, at *11 (D. Or. 2016 Jan. 22, 2016) (finding "no conflict between individual arbitration of [debtor's automatic stay] claim and the Bankruptcy Code" where debtor "brought her claim as a putative class action [which] demonstrates that her claim is not integral to her individual bankruptcy proceeding"). And, as in *Hill*, any arbitrator would be tasked with applying the evidence to a straightforward statute, rather than interpretating an order of a bankruptcy court. *Hill*, 436 F.3d at 109-10. (finding that the automatic "stay is not so closely related to an injunction that the bankruptcy court is uniquely able to interpret and enforce its provisions" and an arbitrator "would be asked to interpret and enforce a statute, not an order of the bankruptcy court").

Left grasping for straws, Plaintiffs' only argument for rejecting the well-reasoned *Hill* decision is that, given the "brevity of the typical Chapter 7 process," this could allow "any creditor with an arbitration clause . . . [to] abuse Chapter 7 debtors in violation of the automatic stay without fear of any meaningful consequences from the bankruptcy court." Opp. at 16-17. But this argument (for which Plaintiffs cite no authority) does not hold water given that creditors remain subject to the same potential damages for violations of the stay both during and after a Chapter 7 proceeding and, therefore, have sufficient incentive in all contexts to not violate the automatic stay while it remains in effect.

### C.   Plaintiffs' Remaining Arguments Against Arbitration Are Meritless

Plaintiffs offer a litany of other arguments in an attempt to persuade the Court to exercise its discretion to reject their agreement to arbitrate this case. In so doing, they try to chip away at

7

longstanding Supreme Court precedent holding that statutory claims are arbitrable. None is persuasive, and none provide a rationale for Plaintiffs to avoid their agreements to arbitrate. *First*, while Plaintiffs highlight the need for uniform nationwide enforcement of the Bankruptcy Code, Opp. at 13-15, uniform interpretation is a goal with every federal statute and yet the Supreme Court has repeatedly recognized that an arbitrator should be trusted to interpret and apply federal statutes. *See* Mot. at 10-11 (citing cases). Accepting Plaintiffs' argument would mean that no alleged violation implicating any section of the Bankruptcy Code could ever be sent to arbitration. That is not, and cannot be, the law. *See, e.g.*, *Hosseini v. Upstart Network, Inc.*, 2020 WL 573126, at *1, 8 (E.D. Va. Feb. 5, 2020) (enforcing arbitration agreement where defendant allegedly failed to "report the discharge" of plaintiff's bankruptcy); *In re Rescue Rangers, LLC*, 582 B.R. 669, 680 (Bankr. E.D. Va. 2018) (enforcing arbitration provision where plaintiff brought a "core" fraudulent conveyance claim, because there was no "inherent conflict with the Bankruptcy Code that [was] sufficient to override by implication the presumption in favor of arbitration"). Indeed, in giving district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11," Congress made clear that claims that arise under the Bankruptcy Code—such as automatic stay claims—do not even need to be heard in federal court at all. *See* 28 U.S.C. § 1334(b).

*Second*, Plaintiffs argue that bankruptcy courts are uniquely equipped to address stay violations. Opp. at 18-20. But bankruptcy courts are "not uniquely situated to interpret the automatic stay," *In re TexStyle*, 2012 WL 1345646, at *9, which is consistent with Congress' grant of only "non-exclusive" jurisdiction to the federal courts. To that end, numerous courts have already held that arbitration of alleged automatic stay violations is proper. Mot. at 12-13 (citing cases). And the Supreme Court has repeatedly "rejected generalized attacks on arbitration that rest on 'suspicion of arbitration as a method of weakening the protections afforded in the substantive

8

law to would-be complainants,'" *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89-90 (2000). (citation omitted). Similarly, Plaintiffs' contention that an "unspecialized private arbitrator" does not have the ability to make a "ruling that benefit[s] the entire bankruptcy process," Opp. at 19-20, lacks relevance here. Plaintiffs' bankruptcy cases have been discharged or had a plan confirmed, and they are attempting to seek damages on behalf of themselves and other former debtors who are no longer even in bankruptcy, most of whose cases never were before this Court or within the ambit of its jurisdiction. Given the status of their bankruptcies, Plaintiffs' alleged receipt of a handful of automated emails or phone calls after commencing their bankruptcies clearly did not jeopardize the administration of their estates,[3] and their claim they are now entitled to damages can readily be resolved by an arbitrator and does not require the unique expertise of this Court.[4]

*Third*, Plaintiffs argue that "without the protection of the automatic stay, debtors are vulnerable to abuse." Opp. at 14-15. This is nonsensical. Indeed, the automatic stay protects debtors regardless of the forum where they might pursue claims for alleged violations of the stay.

---

[3] Unlike *Walker v. Gotcha Towing & Recovery, LLC (In re Walker)*, 551 B.R. 679 (Bankr. M.D. Ga. 2016), which Plaintiffs rely on throughout the Opposition, the alleged violations of the automatic stay in this case are relatively minor. In *Walker*, the debtor alleged that the creditor repossessed his car which "could mean the loss of his job and the stymying of his Chapter 13 rehabilitation." *Id.* at 694. Conversely, here, Plaintiffs allege only discrete e-mails and calls made to Plaintiffs after their bankruptcy filing, the last of which occurred over four months ago, and which are not alleged to have disrupted the administration of their bankruptcy estates. *See* Compl. ¶¶ 22-28, 42-44. Other courts have acknowledged the *de minimis* nature of alleged violations like these. *See, e.g.*, *In re Defeo*, 635 B.R. 253, 267 (Bankr. D.S.C. 2022) (finding receipt of a "single collection letter[] insufficient to support an award of emotional distress damages" and ultimately awarding debtor a mere $16.76 in additional damages outside of attorneys' fees and costs); *In re Harris*, 374 B.R. 611, 616-18 (Bankr. N.D. Ohio 2007) (describing defendant's conduct of sending two post-petition letters to the debtor as "a minor stay violation" that did not warrant any damages beyond attorneys' fees).

[4] Indeed, *Walker* expressly noted that part of the basis for its refusal to compel arbitration in that case was because "the alleged stay violation occurred, [the] action was brought, and the Motions to Compel Arbitration were filed while the Debtor's case was still pending." *Walker*, 551 B.R. at 694. Here, by the time the adversary proceeding was filed, Maze's bankruptcy had been discharged and Brown had a plan confirmed.

Again, the agreements here permit Plaintiffs to seek in arbitration the same relief as they can pursue in this court, whether monetary damages (including punitive damages) or injunctive relief (although any such injunction would be unnecessary as duplicative of the automatic stay). Accordingly, Plaintiffs have failed to show that the purposes of the automatic stay—i.e., "to preserve the relative positions and rights of creditors as established by the Bankruptcy Code and to protect the debtor, individually, from collection activities," Opp. at 14 (citing *In re Seaton*, 462 B.R. 582, 591 (Bankr. E.D. Va. 2011))—are impeded at all by sending the case to arbitration.

Having tried to undermine arbitration generally, Plaintiffs' next line of attack is to argue that debtors require court supervision to perform under a plan of repayment. Opp. at 18. But, of course, this Court will still be supervising Brown to ensure that she performs under her repayment agreement—just like she should perform under her agreement to arbitrate this claim. The question of whether she is entitled to damages for the handful of emails she received several months ago from GS Bank does not impact the Court's supervision of her plan of repayment.

Finally, Plaintiffs assert that the fact that they brought a purported class action mandates that the Court disregard the terms of the Arbitration Provision. Opp. at 9, 14, 16-17. But Plaintiffs' focus on their putative class is a red herring because:

- Plaintiffs do not dispute that they (and the rest of the putative class) waived their right to proceed on a class basis in the Agreement, *see* Adams Decl., Ex. A at 16-17; *see also Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 238-39 (2013) (enforcing arbitration agreements even where such agreements preclude class action claims);

10

- The putative class members can obtain relief on their unique facts without the need for a class, as reflected in the seven other cases Plaintiffs identify, Opp. at 7 n.2, who obtained relief without a class;[5]

- Plaintiffs offer no evidence that the handful of alleged violations they identify exist beyond this miniscule percentage of the number of Apple Card holders; and

- The inclusion of former debtors in the proposed class—including, but not limited, to, plaintiff Maze—underscores that this case is about a claim for money damages, which can readily be resolved in arbitration.

Simply put, there are multiple reasons why Plaintiffs' putative class claims do not justify ignoring the Arbitration Provision.

### III.    CONCLUSION

For the foregoing reasons, GS Bank respectfully requests that the Court grant the Motion and enter an order pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure directing Plaintiffs to arbitrate their claims and stay this action pending completion of arbitration.[6]

---

[5] Six of the seven cases referenced by Plaintiffs have already been, or are currently in the process of being, settled.  In the seventh case, *Buzuma v. Goldman Sachs Bank USA, d/b/a Marcus by Goldman Sachs*, Adversary No. 22-06014 (Bankr. W.D. Va. Nov. 28, 2022), a default judgment was entered against GS Bank, which has now been paid.

[6] Plaintiffs do not dispute that should this Court compel arbitration of the action, the case should be stayed pending the completion of arbitration.  *See generally* Opp.

11

Dated: June 21, 2024

Respectfully submitted,

*/s/ David G. Browne*

David G. Browne (VSB No. 65306)
Spiro & Browne, PLC
2400 Brick Road
Glen Allen, VA 23060
Telephone: (804) 573-9220
Facsimile: (804) 836-1855
Email: dbrowne@sblawva.com

Christopher Harris
Jeff G. Hammel
Jason C. Hegt
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 906-1260
Email: jeff.hammel@lw.com
Email: christopher.harris@lw.com
Email: jason.hegt@lw.com
(Admitted *Pro Hac Vice*)

*Counsel for Goldman Sachs Bank USA*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of June, 2024, a true and accurate copy of the foregoing *Reply Brief in Further Support of Defendant Goldman Sachs Bank USA's Motion to Compel Arbitration and Stay Action* was filed via the ECF system and served thereby on all parties receiving notice via the ECF system.

*/s/ David G. Browne*