

SIGNED THIS 15th day of July, 2024

THIS MEMORANDUM OPINION HAS BEEN ENTERED ON THE DOCKET. PLEASE SEE DOCKET FOR ENTRY DATE.

_____
Paul M. Black
UNITED STATES BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| IN RE: ) | CHAPTER 13 |
| ) | |
| RHEA ANN BROWN ) | Case No. 23-70426 |
| Debtor. ) | |
| ) | |
| RHEA ANN BROWN and ) | |
| GREGORY KEVIN MAZE ) | |
| on behalf of themselves and all others ) | |
| similarly situated, ) | |
| Plaintiffs, ) | Adversary Proceeding |
| ) | No. 24-07009 |
| v. ) | |
| ) | |
| GOLDMAN SACHS BANK USA ) | |
| d/b/a MARCUS BY GOLDMAN SACHS, ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

This matter comes before the Court on a Motion to Compel Arbitration and Stay Action ("Motion to Compel") filed by the Defendant, Goldman Sachs Bank USA, by counsel. ECF No. 15. The Plaintiffs, by counsel, filed a Response to the Defendant's Motion to Compel Arbitration ("Response"). ECF No. 19. The Defendant then filed a Reply Brief in Further Support of Defendant Goldman Sachs Bank USA's Motion to Compel Arbitration and Stay Action ("Reply Brief"). ECF No. 20. A hearing was held on the Defendant's Motion to Compel on June 28,

2024, after which time the Court took the matter under advisement. Upon review of the Parties' filings and the arguments advanced at the hearing, and for the reasons stated below, the Court will deny the Defendant's Motion to Compel.

## STATEMENT OF THE CASE

Plaintiff Rhea Ann Brown ("Brown") filed for Chapter 13 bankruptcy in this Court on June 14, 2023; she filed a Chapter 13 plan on June 27, 2023 which was confirmed on September 1, 2023. Plaintiff Gregory Kevin Maze ("Maze") filed for Chapter 7 bankruptcy in this Court on November 9, 2023 and was granted a discharge on February 21, 2024. Before their bankruptcies, the Plaintiffs both opened Apple Card accounts with the Defendant and signed an Apple Card Agreement. *See* ECF No. 15 at 3-4. The Agreement contains an Arbitration Provision which potential Apple Card holders needed to affirmatively opt out of. *See id*. Exhibit A at 16-17.

The Plaintiffs filed this adversary proceeding on March 12, 2024 alleging that they were sent notices and communications from the Defendant regarding the balance due on their Apple Card accounts even after the Defendant was made aware of the Plaintiffs' being in bankruptcy, actions which the Plaintiffs allege violated the automatic stay under 11 U.S.C. §§ 362(a)(3) and (6). *See* ECF No. 1 ¶¶ 17-55.[1] The Complaint is styled as a class action seeking relief for a class of similarly situated present and former debtors in bankruptcy "from whom Defendant made a post-petition demand for pre-petition debt." *Id.* ¶ 57. The Plaintiffs seek, not without limitation: (1) declaratory relief for violation of 11 U.S.C. § 362; (2) injunctive relief under 11 U.S.C. §105(a) for both a preliminary and permanent injunction preventing the Defendant from engaging in such conduct; and (3) actual, compensatory, exemplary and/or punitive damages,

---

[1] 11 U.S.C. §§ 362(a)(3) and (6) state that filing a petition for relief "operates as a stay, applicable to all entities, of –
. . . (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;  . . . [and] (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]" 11 U.S.C. §§ 362(a)(3), (6).

2

including attorneys' fees and costs, for the Defendant's alleged willful violation of the stay. *See id.* ¶¶ 65-71, 73, 75-83, 85.

The Defendant responded by filing the Motion to Compel asking the Court, pursuant to Federal Rule of Civil Procedure 12(b)(3) and the Federal Arbitration Act ("FAA"), to compel the Plaintiffs to arbitrate their claims and to stay the adversary proceeding pending arbitration. The Defendant alleges the Plaintiffs, having signed the Apple Card Agreement and not opted out of the Arbitration Provision, are bound by the Arbitration Provision and the Plaintiffs' claims fall within its broad scope. *See* ECF No. 15 at 3-4, 9-10. The Defendant further asserts that the Court should follow the U.S. Supreme Court's decisions favoring enforcing arbitration agreements as well as the Second Circuit's decision in *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006), with similar facts to this case in which the Court granted a motion to compel. *See* ECF No. 15 at 12-14.[2]

In their Response, the Plaintiffs argue their automatic stay violation claims are "constitutionally core" claims that stem from their bankruptcies and the Fourth Circuit has determined that a bankruptcy court has the discretion to retain them in cases such as in *In re White Mountain Mining Co., L.L.C.*, 403 F.3d 164 (4th Cir. 2005), and *Moses v. CashCall, Inc.*, 781 F.3d 63 (4th Cir. 2015). *See* ECF No. 19 at 9-11, 19 fn.7.[3] The Plaintiffs also contend that section 105(a) gives the Court the power to issue contempt orders and injunctions to sanction automatic stay violations but that if the Plaintiffs' claims were sent to arbitration, the Court would not be able to exercise its contempt powers *sua sponte* in this case even if it determines

---

[2] The Defendant attached to the Motion to Compel: (1) a declaration from one of its Legal Operations Associates to explain how the Defendant issues Apple Cards and keeps track of customers' acceptances of the terms and conditions of the card agreements and (2) a copy of the Apple Card Agreement, including the arbitration provision. *See id.* Exhibit A.

[3] The Plaintiffs do not dispute the Apple Card Agreement was a valid agreement.

3

that sanctions and injunctive relief would be appropriate. *See id.* at 11-13. The Plaintiffs further contend that having an arbitrator less experienced in bankruptcy law than this Court decide the Plaintiffs' claims could risk inconsistent judgments and does not promote the Constitution's mandate that Congress enact uniform bankruptcy laws. *See id.* at 18-20. Further, the Plaintiffs contend that *Hill* is not fully on-point with the facts of this case and is not binding precedent in this Circuit. *See id.* at 16-17.

In reply, the Defendant argues that under Fourth Circuit precedent in *CashCall* and *White Mountain*, the Court should not exercise its discretion to retain constitutionally core claims if it finds no inherent conflict with the Code's purposes. *See* ECF No. 20 at 1. The Defendant alleges that the Code's central purpose of "facilitating the efficient reorganization of an estate through the centralization of disputes concerning a debtor's legal obligations," would not be hampered here because the Plaintiffs' cases have been fully administered. *See id.* at 3-4 (quoting *In re Geostellar, Inc.*, 614 B.R. 669, 674 (Bankr. N.D.W. Va. 2020) (internal quotation omitted)). The Defendant additionally contends that injunctive relief would not be meaningful in the Plaintiffs' cases and that their claims are principally about money damages.[4] *See id.* at 4.

At the June hearing, Counsel for the Defendant acknowledged that the Plaintiffs' stay violation claims were constitutionally core. Yet, it reiterated that this case was principally about damages, not injunctive relief, and that the facts of this case differed from *CashCall* and *White Mountain*, where the Fourth Circuit found inherent conflicts with the "animating purpose[s]" of the Code because arbitrating the plaintiffs' claims in those cases would affect the claims administration process and would jeopardize those plaintiffs' ability to reorganize their estates.

---

[4] The Defendant further states that the Plaintiffs can also request and recover punitive damages in an arbitration and that the Arbitration Provision allows for an arbitrator to award declaratory and injunctive relief if it finds it appropriate. *See* ECF No 20 at 4-5.

4

*E.g.*, *CashCall*, 781 F.3d at 83 (Gregory, J., concurring). Counsel for the Defendant further contended that sending the claims to arbitration would not affect the Plaintiffs' fresh start or automatic stay's purpose of stopping creditor harassment. Counsel further argued that the Plaintiffs' fresh starts were not impaired since their estates had been fully administered prior to filing the adversary proceeding and that the cases the Plaintiffs cited as to creditor harassment did not apply here. These cases involved creditors threatening debtors or taking their physical property while the Defendant in this case sent balance notices without taking the additional step of charging off a customer's unsecured debt.

Counsel for the Plaintiffs, in turn, argued that arbitrating these agreements could result in inconsistent judgments for different plaintiffs and that the constitutional mandate that bankruptcy laws be uniformly applied outweighs the statutory presumption towards arbitration. Counsel for the Plaintiffs also reiterated the Court has the discretion to retain their constitutionally core claims under *CashCall* and *White Mountain*. Counsel further contended that discharged Chapter 7 debtors should not be treated differently than current Chapter 13 debtors since arbitrating the claims of both types of debtors would undermine the bankruptcy process's efficient administration and uniformity. In support, Counsel for the Plaintiffs cited *In re Anderson*, 884 F.3d 382 (2d Cir. 2018), in which the Second Circuit found that arbitrating a debtor's discharge violation claims would cause an inherent conflict with a bankruptcy court's ability to police violations of the discharge order because it extends forever. Counsel for the Plaintiffs asserted that this would be the same in the context of an automatic stay violation for a subsequently discharged debtor because the Court is still administering these cases, even if the automatic stay has become part of the discharge order.

5

## JURISDICTION

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a), the referral made to this Court by Order from the District Court on December 6, 1994, and Rule 3(a) of the Local Rules of the United States District Court for the Western District of Virginia. For the reasons stated below, this Court further concludes that this matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. §§ 157(b)(1) and (2).[5]

## CONCLUSIONS OF LAW

In *In re McPherson*, 630 B.R. 160 (Bankr. D. Md. 2021), Judge Harner succinctly described the competing interests between the FAA and the Bankruptcy Code, particularly as they pertain to efficiency and fairness. The FAA is rooted in the notion that arbitration agreements are private contracts affecting commerce, creating a strong presumption in favor of the parties' agreement to privately resolve disputes. *Id*. at 166-167. As stated in *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987), the FAA "establishes a 'federal policy favoring arbitration.'" Further, agreements to arbitrate are to be rigorously enforced. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). "This approach reflects the reality that, at least in contracts subject to negotiation, the arbitration clause may be a critical

---

[5] 28 U.S.C. § 157 is not jurisdictional, but simply allocates the statutory authority to enter final judgments between the bankruptcy court and the district court. *Stern v. Marshall*, 564 U.S. 462, 480 (2011). The bankruptcy courts' constitutional powers, in turn, are governed by the scope of power conferred upon Congress under the Bankruptcy Clause of the United States Constitution, Article I, Section 8, Clause 4 ("The Congress shall have Power To . . . establish . . . uniform Laws on the subject of Bankruptcies throughout the United States. . . "), and the scope of authority allocated by and between tribunals created under Articles I and III of the United States Constitution, each as applied and interpreted by the opinions of the United States Supreme Court. Therefore, in order for a bankruptcy court to hear and determine any matter, it must have subject matter jurisdiction under 28 U.S.C. § 1334, statutory authority under 28 U.S.C. § 157, and constitutional authority. *See In re Dambowsky*, 526 B.R. 590, 595 (Bankr. M.D.N.C. 2015) (Kahn, J.).

piece of the parties' bargain and integral to their cost-benefit analysis of the contract itself." *McPherson*, 630 B.R. at 167.

On the other hand, the Bankruptcy Code is not party or contract specific. Rather, it seeks to balance the rights of many parties with many different interests, contract and otherwise, that may affect a single debtor. Citing *CashCall* and *Celotex Corp., v. Edwards*, 514 U.S. 300, 308 (1995), "Congress intended to grant comprehensive jurisdiction to bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *McPherson*, at 167. The FAA and the Bankruptcy Code do not always compete, but when they do a bankruptcy court must consider their competing considerations.

*McMahon* sets the standard for resolving such competing interests. In *McMahon*, the Supreme Court stated that "[l]ike any statutory directive, the [FAA's] mandate may be overridden by a contrary congressional command." *McMahon*, 482 U.S. at 226. The Fourth Circuit, considering *McMahon*, has stated that "the party seeking to prevent enforcement of an applicable arbitration agreement must show that 'Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.'" *CashCall*, 781 F.3d at 71 (quoting *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 90 (2000)). *CashCall* instructs lower courts to examine whether that intent can be gleaned from (1) the statute's text, (2) its legislative history, or (3) "an inherent conflict between arbitration and the statute's underlying purposes." *CashCall*, at 71 (quoting *McMahon*, 482 U.S. at 227). Significantly, "[w]here such an intent can be deduced, the court of first impression has *discretion* to decide whether to withhold arbitration, a decision that is subject to review for abuse of that discretion." *Id*. (citations omitted). While a deeper dive into a statute's text and legislative history may be instructive, the Court in this case focuses on the

7

third element, whether an inherent conflict exists between the FAA and the Bankruptcy Code provision at play here.

As the relevant court of first impression, a bankruptcy court, it makes a difference as to whether this Court is considering a constitutionally core claim or a constitutionally non-core claim. As the Fourth Circuit has stated, "forcing [a debtor] to arbitrate her constitutionally core claim would inherently conflict with the purposes of the Bankruptcy Code." *CashCall*, at 73.[6] Do we have a 'constitutionally core' claim at issue in this case? Yes, "[a] cause of action is constitutionally core when it stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process . . .. If a claim is a constitutionally core proceeding, the bankruptcy court has the discretion to retain the proceeding and not enforce the terms of the parties' arbitration agreement." *McPherson*, 630 B.R. at 168 (internal citations omitted).

Bankruptcy courts have the statutory authority to resolve a claim arising from a violation of the automatic stay. Such a claim, by its very nature, "stems from the bankruptcy itself" and has no independent existence outside a bankruptcy case being filed. *Marshall*, 564 U.S.at 499. Here, the Plaintiffs seek remedies for violations of the automatic stay and relief incidental thereto. 11 U.S.C. § 362(k)(1) provides, in pertinent part, that ". . . an individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." Resolution of the debtors' claims under this Code section is both constitutionally and statutorily based.

*Budget Serv. Co. v. Better Homes*, 804 F.2d 289, 291 (4th Cir. 1986), supports this conclusion. In *Budget Service Co.,* the debtor brought a claim alleging that the creditor's attempt

---

[6] The Court finds persuasive Judge Gregory's concurrence in *CashCall* that "[t]he core/non-core distinction, however, is not mechanically dispositive in deciding whether a bankruptcy judge may refuse to send a claim to arbitration." *CashCall*, at 83. Here, the existence of constitutionally core claims unburdened by non-core claims makes that analysis less applicable.

8

to repossess vehicles was a violation of the automatic stay. *Id.* There, the Fourth Circuit held that a claim for violation of the automatic stay is a core proceeding under 11 U.S.C. §§ 157(b)(2)(A), (2)(E), and (2)(G) because it involves an "integral part of the federal rights created under the Bankruptcy Code" and that the bankruptcy court "clearly had the power" to hear and issue a judgment. *Id*. at 292. These claims are constitutionally core as the logical outgrowth of the authority giving rise to the Bankruptcy Code itself, and the Court will exercise its discretion and deny the motion to compel arbitration.[7]

The Defendant relies on *Hill*, as authority for enforcing the arbitration clauses against these Plaintiffs in connection with their stay violation allegations. In *Hill*, the Second Circuit observed that "most importantly," the plaintiff's stay violation claim "would not jeopardize the important purposes that the automatic stay serves: providing debtors with a fresh start, protecting the assets of the estate, and allowing the bankruptcy court to centralize disputes concerning the estate." *Id.* at 109. *Hill* mentioned that as the plaintiff's case was a liquidating Chapter 7, there was no reorganization and any damages awarded would not be part of the estate. Not only is *Hill* at variance with Fourth Circuit precedent in *CashCall*, but its primary argument also misapprehends the reality of consumer bankruptcies in particular. The vast majority of debtors coming into the bankruptcy courts, especially consumer debtors like the ones here, have very limited resources. This Court sees it nearly every day. Centralizing the resolution of disputes before the bankruptcy court, whether the debtor is in a no-asset Chapter 7 liquidation or Chapter 13 repayment plan, enables to the debtors to preserve those limited resources, and gain the "fresh start" so often stated as the principal purpose of the Bankruptcy Code. As Justice Stevens stated in *Marrama v. Citizens Bank of Massachusetts,* 549 U.S. 365, 367 (2007), "[t]he principal

---

[7] The Court also finds that the statutory core requirements of 28 U.S.C. §§ 157(b)(1) and (2) are satisfied.

9

purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" (citations and internal quotation marks omitted). Forcing debtors to resolve their disputes, particularly in the nature of post-filing collection actions, in multiple forums ignores a consumer debtor's financial reality and contravenes this central tenant.[8]

In addition to the constitutionally core considerations above, the Court believes maintaining the claims in this case before this Court is more consistent with the goals of the Bankruptcy Code than of the FAA. In that regard, the legislative history consideration of *CashCall* comes into play. As the Fourth Circuit observed in *Grady v. A.H. Robins Co., Inc.*, 839 F.2d 198, 200 (4th Cir. 1988), "[t]he legislative history of the Code reveals the importance of § 362 stay provision: The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy. House Report No. 95-595, 95th Cong. 1st Sess. 340-1 (1977); Senate Report No. 95-989, 95th Cong.2d Sess. 54-55 (1978); reprinted in 1978 U.S. Code Cong. & Adm. News 5787 at 5840 and 6296-97."

The well pleaded allegations of the Complaint, taken as true at this point in the proceedings, suggest a broader issue of multiple debtors being pursued for payment post-filing in violation of the automatic stay in each of their cases. Whereas in a single or few cases outside bankruptcy, an account dispute between two parties may well best be served by submitting the dispute to arbitration. But this is more than an account dispute. Larger systemic issues are alleged to be at play here, ones which implicate the foundational purposes of the Bankruptcy

---

[8] For this reason, the Court finds the arguments that a given plaintiff may have had a case fully administered, discharged, or in a post-confirmation Chapter 13 plan of little persuasion.

Code and which the Bankruptcy Code – and the specialized experiences of the bankruptcy courts – are particularly suited to address in a global manner.[9]

Moreover, as stated in *In re Grant*, 281 B.R. 721, 725 (Bankr. S.D. Ala. 2000), "[a]lowing arbitration of alleged violations of court authority would leave nonjudicial third parties to punish abuse of the judicial system." The power and authority of the judicial system and the fundamental protections afforded by Congress in the Bankruptcy Code, especially in connection with the automatic stay, would be diminished by such a delegation of power. "An arbitrator cannot be allowed to take the role of protector of the judicial process when he or she is outside the system and is an alternative to the system." *Id.* See also *In re Bauer,* No. AP 20-80012-DD, 2020 WL 3637902, at *6 (Bankr. D.S.C. June 8, 2020), where the Court stated "Congress has assigned to the bankruptcy court the duty to enforce its orders. 'To permit a party other than the bankruptcy court to make such determinations would undermine the court's ability to enforce both its own orders and the Bankruptcy Code and would "strip the courts of their primary enforcement mechanism."' *Little*, pg. 6 (quoting *Hooks v. Acceptance Loan Co., Inc.*, 2011 WL 2746238 (M.D. Ala. July 14, 2011))."

## CONCLUSION

For all of the above reasons, the Defendant's Motion to Compel Arbitration and Stay Action will be denied. A separate order will follow.

---

[9] Whether or not a class can or should be certified is a question for another day. Fed. R. Bankr. P. 7023(a).